IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 07-550-05 |
| STEVEN NORTHINGTON : | |

**SURRICK, J.**                                                                                                                                                  **JULY 12 , 2012**

**MEMORANDUM**

      Presently before the Court are the Government's Request for Discovery of Defendant Northington's Mental Health Evidence (ECF No. 532), and Defendant Steven Northington's Memorandum Concerning Discovery Under Rule 16 and Proposed Competency Exam (ECF No. 533). For the following reasons, the Government's Request for mental health discovery will be granted.

**I.    BACKGROUND**

      On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment charging Defendant Steven Northington with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 5 and 7), and tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8). (Fourth Superseding Indictment, ECF No. 480.)[1] Defendant was charged, along with three codefendants, Kaboni

---

[1] The First Superseding Indictment was filed on April 8, 2009. (ECF No. 51.) The Second Superseding Indictment was filed on June 22, 2011. (ECF No. 229.) The Third Superseding Indictment was filed on September 7, 2011. (ECF No. 284.)

Savage ("Savage"), Robert Merritt, and Savage's sister, Kidada Savage.[2]  Defendant Lamont Lewis was also charged in the First Superseding Indictment.  The charges against Lewis were disposed of by guilty plea on April 21, 2011.  On March 14, 2011, the Government filed notices of intent to seek the death penalty against Savage, Merritt and Northington.  (ECF Nos. 196, 197, 198.)  The Government is not seeking the death penalty against Kidada.

On March 23, 2012, an Order was entered setting forth the requirements of, and the deadline for, the filing of notices under Rule 12.2 of the Federal Rules of Criminal Procedure.  (ECF No. 435.)  The Order states that "any Defendant intending to introduce evidence relating to a mental disease or defect or any other mental condition . . . bearing on either (1) the issue of guilt or (2) the issue of punishment, shall submit written notice pursuant to Federal Rule of Criminal Procedure 12.2(b)." (*Id.*)  The Order further states that notice provided under Rule 12.2(b) "shall include the types and kinds of mental health professionals who may testify, as well as a brief, general summary of the topics to be addressed and the types of testing to be done." (*Id.*)  The deadline to file notices under Rule 12.2 was April 9, 2012.  (*Id.*)  On the date that notices were due, Defendant filed a motion for an extension of time to file his notice under Rule 12.2.  (ECF No. 453.)  The Government opposed the extension.  (ECF No. 458.)  On May 25, 2012, an Order was entered granting Defendant's motion and extending the deadline by which Defendant could file a Rule 12.2 Notice until June 11, 2012.  (ECF No. 489.)

---

[2]  Savage was named as a Defendant in all counts in the Fourth Superseding Indictment: RICO conspiracy (Count 1), twelve counts of murder in aid of racketeering (Counts 2-7, 10-15), tampering with a witness (Count 8), conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9), retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17).  (Fourth Superseding Indictment.)  Merritt is charged on Counts 1, 9, 10-15, 16 and 17.  Kidada is charged on Counts 1,10-15, 16 and 17.  (*Id.*)

On June 7, 2012, Defendant filed a notice pursuant to Rule 12.2. (Rule 12.2 Notice, ECF No. 513.) His Rule 12.2 Notice states that "the defense may seek to introduce expert evidence relating to a mental condition of the Defendant bearing on the issue of punishment." (*Id.* at ¶ 1.) Defendant's Rule 12.2 Notice further states that he "may offer testimony by one or more neuropsychologists, social psychologists and neuropsychiatrists . . . concerning cognitive and intellectual disabilities and brain damage and how these deficiencies combined with [his] social and institutional history to adversely affect his development and adjustment to living in his community and his reaction to and decision making concerning the circumstances alleged in the Indictment . . . ." (*Id.* at ¶¶ 2, 5.) The Rule 12.2 Notice advises that Defendant has "undergone neuroimaging and neuropsychological testing" but that "[n]o further testing is anticipated at this time." (*Id.* at ¶¶ 3, 4.)

On June 11, 2012, counsel for Defendant notified all parties that they were eighty-five percent certain that Defendant would request an *Atkins* hearing, and that reports from defense experts would not be finalized for at least another sixty days. (Def.'s Mem. 1, ECF No. 533.)[3] Counsel for Defendant subsequently provided the Government with a complete list of all psychological tests conducted on Defendant, including the dates the tests had been administered. (*Id.*)

On June 14, 2012, a status hearing was held to discuss the mental health testing of

---

[3] An *Atkins* hearing is an evidentiary hearing conducted in order to determine whether the defendant is intellectually disabled and therefore ineligible to receive the death penalty. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding that imposition of the death penalty against an intellectually disabled individual is unconstitutional); *see also United States v. Smith*, 790 F. Supp. 2d 482, 503 (E.D. La. 2011) ("The point of an *Atkins* hearing is to determine whether a person was [intellectually disabled] at the time of the crime and therefore ineligible for the death penalty.").

Defendant pursuant to his Rule 12.2 Notice. (June 14, 2012 Hr'g Tr. 1 (on file with Court).) At the hearing, the parties discussed the scheduling of a competency evaluation of Defendant as well as the scheduling of the Government's psychological testing of Defendant for purposes of rebuttal. The Government stated at the hearing that the experts it intends to use require the results and reports of Defendant's expert before examining Defendant. (*Id.* at 9-10.) Counsel for Defendant reiterated that the "final reports" of their experts would not be available for at least another sixty days, but that the Government is not entitled to those final reports prior to independently examining Defendant. (*Id.* at 11-13.) The Court requested that the parties submit briefing on the issue of whether the Government is entitled to the final reports of Defendant's experts prior to conducting its own examination of Defendant.

In response to the Court's request for briefing, on June 18, 2012, the Government filed a Memorandum Requesting Discovery of Defendant Northington's Mental Health Evidence. (Gov't's Mem., ECF No. 532).[4] Also on June 18, 2012, Defendant filed a Memorandum Concerning Discovery Under Rule 16 and Proposed Competency Exam. (Def.'s Mem.)[5] At a status conference held on July 2, 2012, counsel for Defendant agreed to immediately turn over all raw data and test results to the Government. Defense counsel also advised that defense expert reports would not be available for at least another month.

---

[4] We will treat this "request" as a motion for mental health discovery.

[5] The parties agreed that the Court would select a psychiatrist to conduct a competency evaluation of Defendant. On July 3, 2012, an Order was entered appointing Dr. Pogos H. Voskanian to conduct the evaluation and to submit a report to the Court. (ECF No. 542.)

## II. DISCUSSION

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591, *et seq.*, prohibits the carrying out of the death sentence on a person who is intellectually disabled. 18 U.S.C. § 3596(c) ("A sentence of death shall not be carried out upon a person who is mentally retarded.").[6] In *Atkins*, the Supreme Court held that executing intellectually disabled defendants was cruel and unusual punishment in violation of the Eighth Amendment. 536 U.S. at 321. With this decision, the Supreme Court created a categorical exclusion from the death penalty for a certain class of individuals who qualify under psychological definitions as intellectually disabled. Although it is clear that the execution of intellectually disabled defendants is prohibited, neither the FDPA, *Atkins*, nor the Federal Rules of Criminal Procedure establish a procedure for determining claims of intellectual disability.[7] The parties' dispute involves a narrow discovery issue related to Defendant's *Atkins* claim. We are asked to decide whether the reports of Defendant's mental health experts may be disclosed to the Government prior to the Government's experts examining Defendant and generating their own reports for purposes of rebuttal.

### A. The Parties' Contentions

The Government requests pretrial disclosure of Defendant's mental health evidence. Specifically, the Government requests the Court to order defense counsel to provide to the

---

[6] In recent years, the field of psychology has favored use of the clinical designation "intellectual disability" instead of "mental retardation." District courts have followed this trend. *See, e.g*, *United States v. Lewis*, No. 08-404, 2010 U.S. Dist. LEXIS 138375, at *5 (N.D. Ohio Dec. 23, 2010) (using the phrase "intellectually disabled" instead of "mentally retarded"). Although the FDPA continues to use "mental retardation," *see* 18 U.S.C. § 3596(c), we will refer to Defendant's alleged mental health condition as an "intellectual disability."

[7] In *Atkins*, the Supreme Court left "to the state[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution." 536 U.S. at 317.

5

Government "taint" or "firewalled" attorney and to the Government's experts, the results of Defendant's intellectual disability testing and any related conclusions of Defendant's mental health experts.[8] The Government argues that Defendant's delay in providing notice of a potential *Atkins* claim was completely unreasonable, particularly since testing was conducted over eight months ago. It further argues that it is entitled to this mental health discovery under Rule 16(b) of the Federal Rules of Criminal Procedure. Finally, the Government requests that the Court schedule a pretrial hearing to adjudicate Defendant's *Atkins* claim.

Defendant does not dispute that the Government is entitled to examine him under conditions set by the Court once an appropriate motion is made by the Government. Defendant instead takes issue with the disclosure of its experts' reports prior to the Government's examination of Defendant. Defendant contends that Rule 16, which addresses a defendant's disclosure obligations in a criminal proceeding, does not "require disclosure of a formal report to the prosecution prior to their evaluation." (Def.'s Mem. 2.) Defendant also points to Rule 12.2 to support his argument that he need not disclose his reports to the Government until the Government has first disclosed its expert reports to Defendant. (*Id.*) According to Defendant, all that the Government is entitled to is "a summary or notice sufficient to inform [it] of the mental infirmity the defendant claims and sufficient to allow the employment of an expert in the appropriate field to conduct an evaluation." (*Id.*)

---

[8] The Government's Memorandum proposes the designation of an attorney from the Department of Justice or an Assistant United States Attorney from the Eastern District of Pennsylvania to serve as the firewalled attorney for the Government. (Gov't's Mem. 2 n.2.) On July 11, 2012, an Order was entered designating Assistant United States Attorney Maureen McCartney as the "taint" or "firewalled" attorney. (ECF No. 544.)

B.  **Applicable Rules**

Resolving this discovery issue requires review of the Federal Rules of Criminal Procedure applicable to discovery of mental health evidence in a capital case. Rule 12.2(b) provides that:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must — within the time provided for filing a pretrial motion or at any later time the court sets — notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).

Once the defendant provides notice under Rule 12.2(b), "the court may, upon the government's motion, order the defendant to be examined" by an expert selected by the Government. Fed. R. Crim. P. 12.2(c)(1)(B). The Government's examination is conducted "under procedures ordered by the court." *Id.* In addition, where the evidence is intended to be used solely at the sentencing phase of trial, the results and reports of the Government expert's examination "must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." Fed. R. Crim. P. 12.2(c)(2). Rule 12.2(c) also addresses the disclosure of defense expert reports after a Rule 12.2 notice is filed. After disclosure of the Government's expert report, "the defendant must disclose to the Government the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce

expert evidence." Fed. R. Crim. P. 12.2(c)(3). The "objective [of Rule 12.2] is to give the government time to prepare to meet the issue [of defendant's mental health condition], which will usually require reliance upon expert testimony." Fed. R. Crim. P. 12.2 advisory committee note. Rule 12.2 was amended in 2002. *Id.* The 2002 amendment "leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition (apart from insanity)." *Id.*

Rule 16 of the Federal Rules of Criminal Procedure generally governs discovery in criminal cases. It "is intended to prescribe the minimum amount of discovery to which the parties are entitled" and is "not intended to limit the judge's discretion to order broader discovery in appropriate cases." Fed. R. Crim. P. 16 advisory committee note. Subsection (b)(1)(C) of Rule 16 specifically addresses a defendant's disclosure obligations with respect to expert witnesses. It states, in relevant part:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
> . . .
>
> (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C).

The Advisory Committee Notes to Rule 16(b) shed some light on the relationship between Rules 16(b) and 12.2(b):

> The Amendment to Rule 16(b)(1)(C) provides that if the defendant has notified the government under Rule 12.2 of an intent to rely on expert testimony to show the

8

defendant's mental condition, the government may request the defense to disclose information about its expert witnesses. Although Rule 12.2 insures that the government will not be surprised by the nature of the defense or that the defense intends to call an expert witness, that rule makes no provision for discovery of the identity, the expected testimony, or the qualifications of the expert witness. The amendment provides the government with the limited right to respond to the notice provided under Rule 12.2 by requesting more specific information about the expert.

Rule 16(b)(1)(C) advisory committee note.

### C. Legal Analysis

Consideration of the instant discovery dispute implicates not only Rules 12.2(b) and 16(b), but also the Court's authority to regulate the conduct of criminal proceedings, including discovery disclosure requirements, the goals of the FDPA, Defendant's Fifth and Sixth Amendment rights, and the procedure for determining whether a defendant is deemed intellectually disabled and thus ineligible for a death sentence.

Rule 16(b) makes clear that if a defendant has provided notice under Rule 12.2(b), then upon the Government's request, the defendant must turn over a summary of the expert witness testimony that the defendant "intends to use . . . as evidence at trial." Fed. R. Crim. P. 16(b)(1)(C).[9] This summary must include "the [expert] witness's opinions, the bases and reasons for those opinions, and the [expert] witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C).

---

[9] "Trial" includes both the guilt and penalty phases of a capital trial. *United States v. Catalan-Roman*, 376 F. Supp. 2d 108, 113 (D.P.R. 2005) (recognizing that although a capital trial has different phases, it is one bifurcated trial). Accordingly, the disclosure requirements of Rule 16 apply to both the guilt phase and the sentencing phase of a capital trial. *See United States v. Wilson*, 493 F. Supp. 2d 348, 355 (E.D.N.Y. 2006) (finding that the discovery disclosure requirements of Rule 16 apply during the sentencing phase of trial and ordering defendant to disclose to a firewalled government attorney a written summary of expert testimony on the defendant's mental condition); *Catalan-Roman*, 376 F. Supp. 2d at 113 (noting that Rule 16 applies to capital sentencing phase to the same extent it applies to the guilt phase). Therefore, even though Defendant intends to offer mental health evidence for purposes of sentencing only, the disclosure requirements contained in Rule 16 nevertheless apply.

Both the Rule and the Advisory Committee Notes make clear that the discovery obligations contained in Rule 16 apply when a defendant files a notice under Rule 12.2(b) indicating an intent to offer mental health evidence. Here, Defendant filed a notice under Rule 12.2(b) stating that he intends to "introduce expert evidence relating to a mental condition . . . bearing on the issue of punishment." (Rule 12.2 Notice ¶ 1.) Defendant's Rule 12.2 Notice further states that he intends to introduce testimony "concerning cognitive and intellectual disabilities." (*Id.* at ¶ 5.) Defendant's Rule 12.2(b) notice triggers the Government's right under Rule 16(b)(1)(C) to request a summary of the expert testimony Defendant intends to use at trial, including a description of "the witness's opinions, and bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). Upon learning that Defendant would be asserting an *Atkins* claim, Defendant requested expert discovery. Under the Rules, Defendant must provide this discovery to the Government.

Since Defendant is obligated to provide the Government with the requested expert discovery, we must determine the extent of, and the schedule for, Defendant's disclosure obligation. Rule 16(b) is silent with respect to the timing of disclosure once the Government requests discovery. The Advisory Committee Notes to Rule 16 state that "it is expected that the parties will make their requests and disclosures in a timely fashion." Fed. R. Crim. P. 16 advisory committee note.[10] The Government requests the immediate disclosure of Defendant's expert reports, and contends that its experts need to review the reports prior to examining

---

[10] In *United States v. Wilson*, the court determined that disclosure in a timely fashion for purposes of Rule 16(b) meant that the defendant was required to turn over their expert reports to the government three weeks prior to jury selection. 493 F. Supp. 2d at 357. In balancing the interests of the parties, the court found that three weeks provided enough time for the government to schedule their examination. *Id.*

10

Defendant in order to provide a meaningful rebuttal. Defendant relies on Rule 12.2(c) to support his argument that he need not turn over his expert reports prior to the Government's examination. As noted above, Rule 12.2(c)(2) provides that the Government's expert report "must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on [a] mental condition." Fed. R. Crim. P. 12.2(c)(2). The Rule further provides that after disclosure of the Government's expert reports, "the defendant must disclose to the government the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence." Fed. R. Crim. P. 12.2(c)(3). Based on these rules, Defendant suggests that he need not turn over his expert reports until after the Government discloses its expert reports.

Defendant's reliance on the expert report disclosure provisions of Rule 12.2(c) overlooks the nature of his Rule 12.2 Notice. Defendant is claiming intellectual disability. He is making a claim pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). The procedure used by district courts that have considered *Atkins* claims does not logically fit within the framework established by Rule 12.2(c). When addressing *Atkins* claims, the determination of whether a defendant is ineligible for the death penalty due to intellectual disability is made by the district court prior to trial, not by a jury. A preponderance of the evidence standard is employed. *See United States v. Sablan*, 461 F. Supp. 2d 1239, 1242 (D. Colo. 2006); *United States v. Hardy*, 644 F. Supp. 2d 749, 752 (E.D. La. 2008) (noting that judicial economy justifies a pretrial determination of a defendant's intellectual disability claim); *United States v. Nelson*, 419 F. Supp. 2d 891, 894 (E.D.

11

La. 2006) ("[T]he issue of [intellectual disability] is the type of threshold issue (somewhat analogous to competency), that is generally committed to the court for pretrial determination."); *Lewis*, 2010 U.S. Dist. LEXIS 138375, at *2 (noting that defendant's *Atkins* claim should be ruled on by the court and not a jury, and prior to the start of trial).[11] Rule 12.2(c) contemplates the exchange of expert reports after the guilt phase of trial, and only after the defendant has been found guilty of a capital offense. *See* Fed. R. Crim. P. 12.2(c). It would be impossible to have a meaningful pretrial evidentiary hearing to consider Defendant's *Atkins* claim without the exchange of expert reports. Rule 12.2(c)'s provisions related to the disclosure of expert reports obviously cannot apply in cases where a defendant is claiming ineligibility for the death penalty based upon intellectual disability.[12]

Having determined that the Government must be permitted access to Defendant's expert reports before the start of trial, we must next determine when this disclosure should occur. Defendant argues that Defendant's final expert reports should not be disclosed until after the Government's experts have completed their reports. The Government contends that its experts

---

[11] Neither Defendant nor the Government contests holding the *Atkins* hearing prior to the start of trial with the district court serving as the fact-finder.

[12] Cases applying Rule 12.2(c) require that the exchange of expert reports occur only after the guilt phase of the capital trial. *See, e.g.*, *United States v. Sampson*, 335 F. Supp. 2d 166, 243 (D. Mass. 2004) (noting that the procedure in requiring expert reports to be sealed until after the guilt phase is not constitutionally required, but rather is "designed to avoid litigation over whether the government has made derivative use of the evidence"); *United States v. Minerd*, 197 F. Supp. 2d 272, 277 (W.D. Pa. 2002) (sealing reports of both the government and the defendant until after the guilt phase of trial); *United States v. Beckford*, 962 F. Supp. 748, 763 (E.D. Va. 1997) (expert reports not disclosed to the parties until the defendant is found guilty of a capital offense); *see also United States v. Johnson*, 362 F. Supp. 2d 1043, 1080-81 (N.D. Iowa 2005) (holding that defendant need not disclose its expert reports under Rule 12.2(c) until after the government has disclosed its expert reports). None of these cases, however, address *Atkins* claims, which are determined prior to the start of the guilt phase of trial.

should have Defendant's final expert reports before the Government's experts prepare their reports.

It is well-settled that the district court has the discretion to decide the timing of expert discovery disclosures. *See* Fed. R. Crim. P. 12.2(b) advisory committee note ("The [2002] amendment leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition (apart from insanity) . . . . Accordingly, the court is given the discretion to specify the procedures to be used."); *Catalan-Roman*, 376 F. Supp. 2d at 117 ("Of course the *punctus temporis* of expert disclosure must remain in the trial court's discretion"); *Beckford*, 962 F. Supp. at 757 (noting that the absence of a comprehensive scheme for pre-trial procedure in a capital case "points strongly to the conclusion that Congress left the control of the pre-trial aspects of capital cases (e.g. discovery matters) with the courts unless it specifically provided otherwise"); *see also United States v. Edelin*, 134 F. Supp. 2d 45, 48 (D.D.C. 2001) (recognizing that the court has authority to regulate procedure and discovery beyond the scope of the Federal Rules of Criminal Procedure); *United States v. Webster*, 162 F.3d 308, 339 (5th Cir. 1998) ("A district court's decisions in overseeing criminal discovery are entitled to great deference."). Indeed, the Federal Rules of Criminal Procedure recognize this discretion. *See* Fed. R. Crim. P. 57(b) (providing that when there is no controlling law, "[a] Judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district"); *see also Beckford*, 962 F. Supp. at 756 (noting that "it seems rather clear that the inherent powers of the courts to fashion rules of discovery has been incorporated into Fed. R. Crim. P. 57(b)").

In determining the appropriate timing of expert report disclosures, the Court must balance

various interests and considerations. The Court must consider the Government's right to provide meaningful rebuttal to any mental health evidence offered by Defendant. The FDPA recognizes the Government's right to be afforded a "fair opportunity" for rebuttal. It states:

> The government and the defendant shall be permitted to rebut any information received at the [sentencing] hearing, and shall be given a fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.

18 U.S.C. § 3593(c).[13] This right to rebut the mental health evidence offered by Defendant would be rendered meaningless if the Government and the Government's experts were not timely provided Defendant's expert reports. *See Catalan-Roman*, 376 F. Supp. 2d at 115 ("[D]isclosure [of defense expert reports] is warranted in order to allow the government to acquire and/or develop its own expert testimony if there is to be some semblance of meaningful expert rebuttal."); *Wilson*, 493 F. Supp. 2d at 356 (stating that disclosure of mental health expert reports and examination results "will serve the purpose of eliminating necessary delay in allowing the Government to adequately prepare its rebuttal case."); *see also Webster*, 162 F.3d at 339 (acknowledging that a district court has the inherent authority under Fed. R. Crim. P. 57(b) to require the defendant to disclose its expert reports and submit to a government psychiatric exam on the government's motion, and that this procedure furthers the goals of providing the government with a fair opportunity for rebuttal and ensuring that the sentence rests on appropriate considerations). We are satisfied that the Government's experts must be permitted to

---

[13] The statute specifically applies to the sentencing hearing. *Atkins* claims and associated *Atkins* hearings are directly related to sentencing since a finding of intellectual disability forecloses a capital sentencing hearing. Clearly, the statute's command to provide meaningful rebuttal should apply to an *Atkins* hearing.

review the reports and the examination and testing procedures used by Defendant's experts prior to their examination of Defendant. Meaningful rebuttal means being permitted to test not only the conclusions of Defendant's expert, but also the testing procedures used to reach those conclusions.

The Government's right to the opportunity for meaningful rebuttal is based upon considerations of reliability, accuracy and fairness. These considerations are essential to a sentencing determination in a capital case. "The Eighth Amendment imposes a heightened standard 'for reliability in the determination that death is the appropriate punishment in a specific case.'" *Simmons v. South Carolina*, 512 U.S. 154, 172 (1994) (Souter, J., concurring) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)). The requirement of accurate reliable information when dealing with the death penalty is promoted by providing the Government and its experts with the time and opportunity to prepare a rebuttal.

The Court must consider the problems that postponing the disclosure of Defendant's expert reports to the Government will cause. Trial in this matter is presently scheduled for September 2012. An *Atkins* hearing will need to be scheduled prior to trial. If the Government's experts were to examine Defendant and prepare a report without the benefit of reviewing Defendant's expert reports, they would almost certainly need additional time to subsequently review Defendant's expert reports and revise their reports to properly rebut the defense expert's conclusions and testing procedures. This creates the potential for delay. Again, the right to rebuttal would be rendered meaningless if the Government's expert did not have the opportunity to review and rebut the conclusions reached by, and the testing procedures used by, Defendant's experts. *See Wilson*, 493 F. Supp. 2d at 356 (stating that disclosure of defendant's mental health

evidence "will serve the purpose of eliminating necessary delay in allowing the Government to adequately prepare its rebuttal case.").

We are not unmindful of the fact that the trial schedule here may be disrupted because of Defendant's delay in asserting this *Atkins* claim. Defendant was first indicted in April 2009. (*See* ECF No. 51.) He has had over three years to prepare his defense, including any mental health defense. The testing of Defendant by his experts took place last October. Yet Defendant waited until three months before the start of trial to notify the Government and the Court that he might be asserting an *Atkins* claim and counsel have still not received the experts' final reports. The exchange of Defendant's expert reports now may permit this matter to proceed on schedule. Moreover, the disclosure of Defendant's reports to the Government's firewalled attorney prior to the Government's examination in no way prejudices Defendant. "[A] criminal trial is not 'a poker game in which players enjoy an absolute right to always conceal their cards until played.'" *Catalan-Roman*, 376 F. Supp. 2d at 117 (quoting *Williams v. Florida*, 399 U.S. 78, 82 (1970)).

Finally, the timing of this disclosure will not interfere with Defendant's constitutional rights. Courts have recognized that psychological testing and pretrial discovery of mental health defenses potentially threaten a defendant's Fifth Amendment right against self-incrimination and Sixth Amendment right to effective assistance of legal counsel. *See Estelle v. Smith*, 451 U.S. 454, 462 (1981) (holding that it was a violation of defendant's Fifth Amendment right where defendant's statements made during court-ordered medical examination were used against him during capital sentencing); *id.* (defendant's Sixth Amendment rights were violated where defendant was denied the advice of counsel in deciding whether to submit to psychiatric exam encompassing issue of future dangerousness); *see also Minerd*, 197 F. Supp. 2d at 275. We have

16

entered an Order establishing a firewalled Government attorney for the purpose of handling information, reports and evidence with respect to the psychiatric and psychological testing of Defendant. The firewalled attorney will receive and review all discovery related to Defendant's *Atkins* claim. However, she will not disclose any information related to the *Atkins* claim to the Government's prosecution team. We are satisfied that the use of this firewalled attorney will sufficiently safeguard Defendant's constitutional rights. *See Wilson*, 493 F. Supp. 2d at 356 (stating that use of a firewalled AUSA who will receive the defendant's mental health discovery "protects defendant's rights").

In balancing these interests, we conclude that Defendant must disclose the mental health expert reports related to his *Atkins* claim as soon as possible. We see no problem with allowing the Government's firewalled attorney and experts to receive the reports at this stage in the proceedings. We are advised that Defendant's experts have not yet finalized their reports. We are satisfied that an additional fifteen days is a reasonable time within which Defendant shall provide to the Government the final reports of his mental health experts. Accordingly, on or before July 25, 2012, defense counsel must turn over all expert reports that it intends to rely upon at an *Atkins* hearing to the firewalled attorney for the Government.[14] Given the urgency presented by Defendant's last minute notice that a pretrial *Atkins* hearing would be requested, and given the Court's and the parties' desire to avoid another continuance of trial, Defendant's disclosure of expert reports at this time is clearly appropriate.

---

[14] The Court suggested to defense counsel at the July 2, 2012 status conference that Defendant's expert reports should be turned over to the Government within fifteen days.

### III. CONCLUSION

For the foregoing reasons, the Government's Request for Discovery of Defendant Northington's Mental Health Evidence is granted.

An appropriate Order will follow.

                                        BY THE COURT:

                                        _____
                                        **R. BARCLAY SURRICK, J.**