IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550-05 |
| STEVEN NORTHINGTON | : | |

SURRICK, J.                                         SEPTEMBER  12 , 2012

## MEMORANDUM

Presently before the Court are Defendant Steven Northington's Objections to Some of the Government's Proposed Testing and Renewed Motion for Videotaping (ECF No. 578), and the Government's Response thereto (ECF No. 590). For the following reasons, Defendant's Objections will be overruled, and Defendant's Renewed Motion for Videotaping will be denied.

### I.  BACKGROUND

The factual background of this case is more fully set forth in our August 10, 2012 Memorandum and Order denying Defendant Steven Northington's Motion to Reconsider and Motion to Stay. (*See* ECF Nos. 569, 570.) By way of general background, on May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment against Defendant and his three co-Defendants. Defendant was charged with conspiracy to participate in the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 5 and 7), and tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8). (Fourth Superseding Indictment, ECF No. 480.) On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Defendant. (ECF No. 198.)

On June 7, 2012, Defendant filed a notice pursuant to Rule 12.2(b) of the Federal Rules of Criminal Procedure. (Rule 12.2(b) Notice, ECF No. 513.)[1] Shortly after filing the Rule 12.2(b) notice, defense counsel notified the Government that Defendant would be asserting a claim that he is ineligible for the death penalty on account of intellectual disability and requesting a pretrial hearing pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002).[2] Defendant's claim is based upon psychological tests administered to Defendant in October 2011 by experts hired by the defense team.[3] Pursuant to Court Order, Defendant provided expert reports to the Government on July 25, 2012. (*See* ECF No. 546.)

On July 25, 2012, an Order was entered directing that the United States Bureau of Prisons and the United States Marshals Service transport Defendant to the Medical Center for Federal

---

[1] Defendant's 12.2(b) Notice states that "the defense may seek to introduce expert evidence relating to a mental condition of the Defendant bearing on the issue of punishment." (Rule 12.2(b) Notice ¶ 1.) The Notice further states that

> Defendant "may offer testimony by one or more neuropsychologists, social psychologists and neuropsychiatrists . . . concerning cognitive and intellectual disabilities and brain damage and how these deficiencies combined with [his] social and institutional history to adversely affect his development and adjustment to living in his community and his reaction to and decision-making concerning the circumstances alleged in the Indictment . . . ."

(*Id*. at ¶¶ 2, 5.)

[2] An *Atkins* hearing is an evidentiary hearing conducted in order to determine whether the defendant is intellectually disabled and therefore ineligible to receive the death penalty. *See Atkins*, 536 U.S. at 321 (holding that imposition of the death penalty against an intellectually disabled individual is unconstitutional); *see also United States v. Smith*, 790 F. Supp. 2d 482, 503 (E.D. La. 2011) ("The point of an *Atkins* hearing is to determine whether a person was mentally retarded at the time of the crime and therefore ineligible for the death penalty.").

[3] The Government was not notified about this testing prior to the testing taking place. In fact, the Government did not learn about this testing until June 2012. At that time, trial was scheduled to begin on September 10, 2012.

2

Prisoners ("MCFP") in Springfield, Missouri for psychological testing. (ECF No. 552.) Defendant's transport to the MCFP was ordered in light of the approaching trial date to facilitate the Government's testing of Defendant in response to Defendant's *Atkins* claim. On July 30, 2012, Defendant filed a Motion to Reconsider Transfer. (ECF No. 555.) Defendant raised concerns about Defendant's transfer to the MCFP, among which was the concern that there was no order governing the scope and parameters of the Government's testing. (*See Id*.) On July 31, 2012, a conference was held with counsel for the Government and counsel for all Defendants.[4] After the conference with counsel for all Defendants, a conference with just the Government and Northington's attorneys was held. Defense counsel again expressed concerns about the Transport Order, the scope of the testing that would be administered to Defendant, and the fact that the Government would be permitted twenty-four hour observation and monitoring of Defendant. Defense counsel also requested that the Government's testing of Defendant be videotaped. The Government advised that it would provide a list of the tests that would be administered to Defendant.

On August 1, 2012, counsel for Northington filed a Notice of Appeal of the July 25, 2012 Order transferring Defendant to the MCFP. (ECF No. 558.)[5] On August 2, 2012, Defendant filed a Motion To Stay the Transport Order. (ECF No. 562.) On August 10, 2012, we entered a

---

[4] The purpose of the conference was to discuss scheduling in light of developments related to Defendant Northington's *Atkins* claim. As a result of that conference, an Order was entered rescheduling the trial for January 7, 2013 with *voir dire* of prospective jurors beginning on November 5, 2012. (ECF No. 560.) An *Atkins* hearing was scheduled for October 15, 2012.

[5] The Notice of Appeal was docketed at Case No. 12-3186 (3d Cir.). On August 21, 2012, the Third Circuit entered an Order granting the Government's motion to dismiss the appeal and dismissing the appeal for lack of appellate jurisdiction. (*See* ECF No. 589).

Memorandum and Order denying Defendant's Motion to Reconsider and Motion to Stay. (ECF Nos. 569, 570.) The August 10 Order required the Government to immediately disclose the names of the tests that its experts would be administering to Defendant at the MCFP, and permitted Defendant to file objections to a test or tests within five (5) days. (ECF No. 570.) The Order further stated that any test to which Defendant objects shall not be administered until the objection has been ruled upon, and that counsel for Defendant shall not discuss with Defendant the names or nature of the tests disclosed by the Government. (*Id.*)[6]

By letter dated August 21, 2012, the Government notified the Court and defense counsel that the following tests would be administered to Defendant by the Government's experts:

> Wechsler Intelligence Scale, 4th Edition
> Woodcock-Johnson Tests of Achievement, 3rd Edition
> Trail Making Test, Parts A & B
> Digit Vigilance Test
> Booklet Category Test
> Finger Tapping Test
> Grip Strength Test
> Grooved Pegboard Test
> Story Memory Test
> California Verbal Learning Test
> Figure Memory Test
> Sensory Perceptual Examination
> Rey Complex Figure Copy
> Boston Naming Test
> Controlled Oral Word Association Test
> Test of Variables of Attention 8
> Wisconsin Card Sorting Test
> Minnesota Multiphasic Personality Inventory, 2nd Edition
> Adaptive Behavior Assessment System, 2nd Edition
> Performance Validity Measures ("malingering tests")

(Gov't's Aug. 21, 2012 Letter (on file with Court); *see also* Gov't's Resp. 2-3, ECF No. 590.)

---

[6] The August 10 Order further states that Defendant's testing shall last no longer than fifteen (15) days, unless testing is delayed by reason of Defendant filing objections.

The Government advised that it "does not intend to provide defense counsel with the names of the specific performance validity or 'malingering' tests, before those tests are administered, as that would place at risk the entire testing process." (Gov't's Aug. 21 Letter 2.)

On August 27, 2012, Defendant filed the instant Objections. (Def.'s Objns, ECF No. 578.) Defendant objects to two of the tests disclosed by the Government, raises objections to other aspects of the testing procedure, and requests that the examination be videotaped. (*Id.*) On September 6, 2012, the Government filed a Response. (Gov't's Resp.)

## II. DISCUSSION

### A. Defendant's Objections to Government Testing

Defendant raises the following objections to the Government's proposed examination of Defendant at the MCFP. Defendant objects to two of the tests that the Government intends to administer: the Minnesota Multiphasic Personality Inventory-II (MMPI-II), and the Adaptive Behavior Assessment System-Second Edition (ABAS-II). Defendant also argues that the Government failed to abide by the Court's August 10 Order by failing to disclose the names of specific malingering tests its experts intend to administer. In addition, Defendant "preemptively objects" to "recording observations of [Defendant] in the prison environment, but outside of the testing-taking process" and to questioning Defendant about the offenses with which he is charged.

#### 1. *Tests proposed by the Government*

Before determining whether the MMPI-II and ABAS-II are proper tests for the Government's experts to administer, a determination on what constitutes intellectual disability is appropriate. In *Atkins*, the Supreme Court recognized two sources for the definition of

intellectual disability: the American Association on Mental Retardation ("AAMR"), now known as the American Association on Intellectual and Developmental Disabilities ("AAIDD"), and the American Psychiatric Association ("APA"). 536 U.S. at 309 n.3. The AAIDD defines intellectual disability as:

> a disability characterized by significant limitations both in intellectual functioning and in adaptive behavior, which covers many everyday social and practical skills. This disability originates before the age of 18.

AAIDD Definition of Intellectual Disability, http://www.aamr.org/content_100.cfm?navID=21 (last visited Sept. 9, 2012).[7] The APA definition of "mental retardation" is contained in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision (2000) ("DSM-IV-TR"). *United States v. Hardy*, 762 F. Supp. 2d 849, 852 (E.D. La. 2010). The definition provides, in relevant part, that a diagnosis of intellectual disability requires:

> A. Significantly subaverage intellectual functioning: an IQ of approximately 70 or below on an individually administered IQ test (for infants, a clinical judgment of significantly subaverage intellectual functioning).
>
> B. Concurrent deficits or impairments in present adaptive functioning (i.e., the person's effectiveness in meeting the standards expected for his or her age by his or her cultural group) in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety.
>
> C. The onset is before age 18 years of age.

*Id.* at 852-53 (quoting DSM-IV-TR at 49). The definitions contained in the DSM-IV-TR and the AAIDD Manual are essentially the same. Putting the definitions together, a diagnosis of

---

[7] AAIDD's definition of intellectual disability comes from its most recent edition of its manual entitled "Intellectual Disability: Definition, Classification, and Systems of Supports (11th Edition)."

intellectual disability requires (1) significantly subaverage intellectual functioning, (2) the presence of significant limitations in adaptive functioning, and (3) onset before the age of 18. The parties do not dispute this definition. (*See* Def.'s Objns 6-7; Gov't's Resp. 5.) Defendant has the burden of establishing that he is intellectually disabled by a preponderance of the evidence. *Smith*, 790 F. Supp. 2d at 484; *United States v. Sablan*, 461 F. Supp. 2d 1239, 1243 (D. Colo. 2006).

The MMPI-II is a test widely utilized by clinicians to help identify psychopathy in adults. *See* Pearson, Inc., http://www.pearsonassessments.com/tests/mmpi_2.htm (last visited Sept. 10, 2012). The MMPI-II assists mental health professionals in diagnosing mental disorders and in identifying appropriate treatment modalities. *Id*. The test requires an approximate fifth grade reading level. *Id*.

Defendant argues that the MMPI-II is not an appropriate test for measuring intellectual disability because it "assesses an individual's personality traits" as opposed to "intelligence, academic achievement, cognitive functioning, learning and memory, motor functioning, or other brain dysfunction and impairments." (Def.'s Objns 10.) Defendant also argues that the test requires a higher reading level than possessed by Defendant, and raises concerns about the length of time it would take for him to complete the test. (*Id*. at 12.) Finally, Defendant argues that administering the test implicates his Fifth Amendment rights. (*Id*. at 13-14.) The Government argues that the MMPI-II is a test of emotional functioning, and that "impairments of, or limitations to, emotional functioning can interfere with intellectual functioning in the testing process." (Gov't's Resp. 4.) Thus, the Government believes that the MMPI-II is an important test to administer because emotional functioning might affect testing for intellectual disability.

7

The Government's experts believe that the MMPI-II is a useful tool in the diagnostic process. This Court is not in a position to second guess the judgment of the experts in conducting a broad-based assessment of intellectual disability at this juncture. Moreover, the Government has advised that malingering is a concern based on prior testing of Defendant. (*See* Gov't's Aug. 21, 2012 Letter 2 (stating that Northington has been found to have malingered on at least three prior occasions).) Courts have recognized that the MMPI-II is a test that is sometimes utilized to assess malingering. *See, e.g.*, *Wiley v. Epps*, 625 F.3d 199, 206 (5th Cir. 2010) (noting that Mississippi requires a defendant asserting an *Atkins* claim to take the MMPI-II for an assessment of malingering); *Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131-32 (C.D. Cal. 2008).

Addressing Defendant's other objections to the MMPI-II, we are not persuaded that a 567-question, true/false test, which is predicted to take sixty to ninety minutes to complete is unnecessarily burdensome on Defendant. Defendant's Fifth Amendment argument is equally unavailing. Defendant's right against self-incrimination is not implicated by his taking the MMPI-II. To the extent that Defendant believes that evidence sought to be introduced at the *Atkins* hearing exceeds the scope of his Fifth Amendment waiver, he may raise an objection at that time. Finally, with respect to Defendant's argument that the reliability of the MMPI-II is compromised in light of the fact that it requires a fifth grade reading level and that Defendant's expert found Defendant to possess a reading level of grade 4.1, we are not convinced that this compels the sustaining of Defendant's objection. If after hearing evidence from defense experts and Government experts regarding Defendant's reading level, the Court determines that Defendant's reading level is in fact below that which is required for the MMPI-II, then any results derived from, or conclusions based upon, the MMPI-II will not be considered by the Court

in determining whether Defendant is intellectually disabled. Accordingly, Defendant's objection to the MMPI-II is overruled.

Defendant also objects to the Government's experts being permitted to administer the ABAS-II. The ABAS-II is a test that assesses cognitive and developmental disabilities with adaptive behavior rating scales.[8] It assesses specific adaptive skills areas specified in the DSM-IV-TR: communication; self-care; home living; social/interpersonal skills; use of community resources; self-direction; functional academic skills; work; leisure; and health and safety. Defendant advises that he does not object to the test being administered to third party informants who know Defendant well. Rather, Defendant objects to the test being administered to himself, arguing that adaptive deficit testing should generally only be administered to third party informants. (Def.'s Objns 9.) The Government contends that, although the standards set forth by the APA and the AAIDD caution against relying solely on information obtained by the test subject regarding adaptive functioning, they do not preclude use of this information. (Gov't's Resp. 5.)

The ABAS-II assesses certain adaptive functioning skills that directly correlate with the definition of intellectual disability. Administering the ABAS-II to Defendant is therefore appropriate. The ABAS-II is often administered to defendants raising *Atkins* claims. *See e.g.*, *Ortiz v. United States*, 664 F.3d 1151, 1159 (8th Cir. 2011); *Wiley*, 625 F.3d at 216; *United States v. Davis*, 611 F. Supp. 2d 472, 493 (D. Md. 2009). Even if the ABAS-II results from Defendant are not as reliable as the results obtained from his informants, "it [is] a much greater

---

[8] *See* Pearson, Inc., http://www.pearsonassessments.com/HAIWEB/Cultures/en-us/Productdetail.htm?Pid=015-8004-507 (last visited Sept. 10, 2012).

assistance to the Court to have the data, and allow experts to argue what weight should be given to that data, than to not have the data at all." *Davis*, 611 F. Supp. 2d at 493. Accordingly, Defendant's objection is overruled.

We will permit the Government's experts to administer the MMPI-II and the ABAS-II. However, this does not necessarily mean that expert testimony or conclusions based upon these tests will be admitted, considered, or accepted by the Court at the *Atkins* hearing. This Court "acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal quotation marks omitted). Moreover, the "'expert's testimony is admissible so long as the process or technique that the expert used in formulating the opinion is reliable.'" *Id.* at 244 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994)). Before the Court will consider conclusions based upon these tests, the Court must first be satisfied, after hearing expert testimony, that the tests are reliable and generally accepted in diagnosing intellectual disability, and that they were administered properly. The Court will then consider the weight to be given to such testimony, if any.

### 2. Disclosure of Tests Related to Malingering

The Government has disclosed a list of the specific tests that its experts plan to administer to Defendant. The Government has not disclosed the names of tests related to malingering. Defendant argues that the Government's failure to disclose specific names of malingering tests violates the Court's August 10 Order. We are satisfied that the Government need not at this time disclose the precise malingering tests it intends to administer. The Government has advised that

Defendant has previously malingered on psychiatric testing on three different occasions.[9] Therefore, administering tests that assess malingering is entirely reasonable. Moreover, defense counsel have failed to offer any reason why advance notice of the names of malingering tests is necessary to protect Defendant's rights. At this late date, we will not require the Government to disclose the specific malingering tests prior to administering those tests. However, we direct the Government to give notice to defense counsel when testing has been completed, and to provide to defense counsel the names of the malingering tests administered to Defendant. Defense counsel may raise objections, if any, at the time of the *Atkins* hearing. The Court will sit as the fact-finder on the question of Defendant's claim of intellectual disability at the *Atkins* hearing, *see United States v. Nelson*, 419 F. Supp. 2d 891, 893 (E.D. La. 2006), and may disregard results of malingering tests if determined to be unreliable.

3.  *Observation of Defendant*

Defendant objects to the Government being permitted to observe Defendant while Defendant is housed at the MCFP. Defendant argues that how he functions in a prison setting is not relevant to a determination of intellectual disability. The Government argues that observation of Defendant is an essential component to a broad-based assessment of his intellectual functioning. As other courts have observed, we are not in the position to know what specific types of testing methods are appropriate in order to gain a comprehensive understanding of Defendant's intellectual abilities. This is precisely why experts are retained when a defendant seeks to introduce evidence of a mental condition. Experts are uniquely equipped to determine

---

[9] We note that, in this case, Dr. Pogos Voskanian's report indicated that Defendant was attempting to manipulate the test results in his competency evaluation.

11

what kinds of testing procedures are appropriate in order to assess intellectual disability. *See United States v. Hardy*, 644 F. Supp. 2d 749, 751 (E.D. La. 2008) ("The Court is simply not in a position to know what lines of inquiry are appropriate from the standpoint of the experts" who are performing an examination in response to an *Atkins* claim). If the Court determines, based upon credible expert testimony, that observing Defendant in a prison setting is not a reliable assessment of adaptive behavior for purposes of diagnosing intellectual disability, the Court will give limited weight to, or even exclude, any conclusions based upon such observations. *See, e.g.*, *Hardy*, 762 F. Supp. 2d at 899 (giving limited weight to expert's opinion on adaptive behavior because it was based, in part, on observing Defendant's functioning within a prison setting).

      4.  *Questions Regarding Commission of the Crimes*

Defendant objects to any questioning by Government experts concerning the circumstances surrounding the alleged commission of the crimes charged against him. The Government states that its experts will not question Defendant about the charged crimes. In any event, Rule 12.2(c)(4) protects against the use of incriminating statements, to the extent that they were elicited from Defendant. *See* Fed. R. Crim. P. 12.2(c)(4) ("No statement made by a defendant in the course of any examination conducted under this rule . . . no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition.").

  **B.**  **Renewed Motion for Videotaping of Government Testing**

Defendant also requests that the Government's examination of Defendant be videotaped. The Government strongly opposes the request and advises that its experts believe that it would be

"detrimental to the integrity of the testing process." (Gov't's Resp. 7.) The Government's experts also state that videotaping the examination inhibits both the testing subject and the doctor administering the test, resulting in a "great potential to adversely affect the validity of the testing results." (*Id*. at 8.)

It is within the Court's discretion to order that a mental health examination be videotaped. *United States v. Sampson*, 335 F. Supp. 2d 166, 247-48 (D. Mass. 2004); Fed. R. Civ. P. 12.2(c)(1)(B) (stating that the "court may . . . order the defendant to be examined under procedures ordered by the court"); Fed. R. Crim. P. 12.2(b) advisory committee note ("The [2002] amendment leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition."). Except for citing other cases where courts have permitted the videotaping of a psychological examination, Defendant offers no compelling reason to justify videotaping the Government's examination. It is true that some courts have permitted videotaping of a psychological examination. *See, e.g.*, *United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005); *Sampson*, 335 F. Supp. 2d at 247-48. Other courts, however, have not permitted videotaping. *See e.g.*, *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 514 (E.D. Cal. 2011); *see also Nelson v. United States*, No. 04-8005, 2010 U.S. Dist. LEXIS 48937, at *8-9 (W.D. Mo. May 18, 2010) (denying Government's request to videotape the Government's examination of Defendant); *United States v. Edelin*, 134 F. Supp. 2d 45, 59 (D.D.C. 2001) (denying Government's request to videotape defense mental health examination).

We are satisfied that Defendant's constitutional rights will not be violated by denying his request to videotape the Government's examination. Defendant's Fifth Amendment rights are

adequately protected by Rule 12.2(c)(4), which precludes the use of any statement made by a defendant during the course of a mental health examination, except on an issue regarding defendant's mental condition. *See* Fed. R. Crim. P. 12.2(c)(4). With respect to Defendant's Sixth Amendment rights, the Supreme Court has held that a defendant's Sixth Amendment rights are not violated by the absence of defense counsel during a mental health evaluation where defendant's counsel had been informed of the "nature and scope" of the examination. *Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987). Here, defense counsel have been informed of the nature and scope of the Government's examination in great detail, and have had the opportunity to discuss these details with Defendant.

Experts are better equipped to determine the optimal testing environment and the effects that certain aspects of that environment could have on the integrity of the examination. We agree with the Government's experts that videotaping is intrusive and could have detrimental effects on the testing process. Defendant's experts did not videotape their examination of Defendant. The Government's experts will not be required to videotape their examination. Defendant's Renewed Motion is denied.

## III. CONCLUSION

For the foregoing reasons, Defendant Steven Northington's Objections to Some of the Government's Proposed Testing are overruled, and Defendant's Renewed Motion for Videotaping is denied.

An appropriate Order will follow.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**