IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |

**SURRICK, J.**                                                                                                    **FEBRUARY 1, 2013**

## MEMORANDUM

Presently before the Court is Defendant Steven Northington's Motion to Strike Government Notice of Intention to Admit Other Act Evidence Pursuant to Federal Rule of Criminal Procedure [sic] 404(b). (ECF No. 910.) For the following reasons, Defendant's Motion to Strike will be denied.

**I.    BACKGROUND[1]**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Steven Northington with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); two counts of murder in aid of racketeering, in violation of 18 Pa. Cons. Stat. § 2502(a), 306 and in violation of 18 U.S.C. § 1959(a)(1), (2) (Counts 5, 7); and tampering with a witness, in violation of 18 U.S.C. § 1512(a)(1)(A) (Count 8). (Fourth Superseding Indictment,

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

ECF No. 480.)² Defendant was charged along with three co-defendants, Kaboni Savage, Robert Merritt, and Savage's sister, Kidada Savage. Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011.

The charges against Defendant arise out of a long-standing RICO drug conspiracy that was supported by murder and witness intimidation. The Government alleges that all four Defendants were members of a regional criminal organization, which was based in North Philadelphia and was known as the Kaboni Savage Organization ("KSO"). (Indictment 5.) From late 1997 through April 2010, the members of this racketeering enterprise conspired and agreed to distribute large quantities of controlled substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who had testified, or were about to testify, against the racketeering enterprise or its members. (*Id.* at 6-8.) The KSO packaged, prepared and distributed cocaine, crack and phencylclidine ("PCP") throughout the greater Philadelphia area, and collected drug proceeds in exchange. The KSO operated drug distribution centers, also known as "drug corners," throughout North Philadelphia and maintained control of these drug corners through a pattern of threats, intimidation, violence and murder. (*Id.* at 5.) The KSO was also committed to maintaining, preserving, protecting and expanding its power, territory, and profits. (*Id.* at 6.) It did this by tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence, and murder. (*Id.*)

On October 9, 2004, six people, including four children, died as a result of arson at a

---

² Count 8 of the Fourth Superseding Indictment was dismissed by agreement of the parties. (ECF No. 855.)

home located at 3256 North Sixth Street, Philadelphia, Pennsylvania. The Indictment alleges that Kaboni Savage and Kidada Savage solicited and ordered Lewis and Merritt to set fire to the home of Eugene Coleman, a former associate of Savage. (Indictment 21-23.) Kaboni Savage believed that Coleman was cooperating with the Government and planned to testify against him in his 2005 federal drug conspiracy trial.[3] The firebombing took the lives of Coleman's mother, infant son, and four other relatives. The Government intends to show at trial that the firebombing was ordered by Savage in order to intimidate Coleman and prevent him from testifying against him at the 2005 drug conspiracy trial.

The Indictment further alleges that, in support of the KSO, Defendant murdered Barry Parker on February 26, 2003. (*Id.* at 42.) On April 27, 2007, Defendant was found guilty of the murder in the Court of Common Pleas of Philadelphia County, and sentenced to life in prison. On March 1, 2004, Defendant is alleged to have murdered Tybius Flowers in order to prevent Flowers's attendance and testimony at Kaboni Savage's trial for the murder of Kenneth Lassiter in the Philadelphia County Court of Common Pleas. (*Id.* at 44-45.)

The evidence in question relates to Defendant's arrest on September 8, 2004 on East Wyoming Avenue and B Street in North Philadelphia. Prior to his arrest, on May 20, 2004, a grand jury returned an indictment charging Kaboni Savage, Defendant, and others with conspiracy to distribute cocaine and crack cocaine, money laundering, firearms offenses, and intimidation of witnesses. (Gov't's Notice 2.) After the indictment was unsealed, federal agents

---

[3] Kaboni Savage, Northington, and four other co-defendants not charged in the instant Indictment were prosecuted in the 2005 drug conspiracy case. After a seven-week trial, Savage was found guilty of conspiracy to manufacture and distribute cocaine, money laundering, firearms possession, witness retaliation and other crimes. Coleman testified at that trial. Savage received a sentence of thirty years in prison on these convictions.

3

arrested Kaboni Savage, but could not locate Defendant to arrest him. (*Id.*) A month later, on June 20, 2004, the Government recorded a phone call between Kaboni Savage and Kidada Savage, which the Government claims involved a message to Defendant that he "better go ahead" and "get on that." (*Id.*) Three months later, after being recognized by a law enforcement official, Defendant was arrested during a speeding stop in North Philadelphia. He was driving with a can of gasoline, latex gloves, and a loaded nine millimeter semi-automatic handgun. (*Id.* at 3.)

After Defendant was arrested on the federal drug conspiracy charges and after the trial in 2005, Defendant was found guilty of conspiracy to manufacture and distribute cocaine and firearms possession. Defendant was sentenced to a term of imprisonment of two hundred thirty-five months. On March 14, 2011, the Government filed a Notice of Intent to Seek the Death Penalty against Kaboni Savage, Robert Merritt, and Defendant. (ECF Nos. 196, 197, 198.)

On December 17, 2012, the Government filed a Notice of Potential Prior Bad Acts Evidence Pursuant to FRE 404(b). (Gov't's Notice, ECF No. 828.) On January 16, 2013, Defendant filed a Motion to Strike. (Def.'s Resp., ECF No. 910.)

## II. DISCUSSION

### A. Parties' Contentions

The Government seeks to introduce evidence related to Defendant's arrest on September 8, 2004, which it argues is direct proof of the existence and operations of the KSO. (Gov't's Notice 1.) The Government maintains that the evidence it intends to introduce is direct and intrinsic evidence of the charged conspiracy and not Rule 404(b) prior bad acts evidence. (*Id.* at 3.) As discussed *infra*, intrinsic evidence does not require notice and is admissible pursuant to a

4

Rule 403 analysis. In the alternative, the Government argues that the circumstances surrounding Defendant's arrest are admissible under Rule 404(b) as evidence of a plan, a common KSO goal, and the relationship between Kaboni Savage, Kidada Savage, and Defendant. (*Id.* at 8-9.) In response, Defendant argues that the evidence is inadmissible extrinsic, prejudicial prior bad act evidence. (Def.'s Resp. 8, 11.)

    **B.    Legal Standards**

The admissibility of evidence at the guilt phase of the trial is governed by the Federal Rules of Evidence. Specifically, when considering the admission of prior bad acts, Rules 404(b) and 403 apply. *See United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (applying Rules 404(b) and 403 and finding that district court's decision to admit evidence of prior uncharged conspiracy was proper and not unduly prejudicial).

        *1.    Rule 404(b)*

Under the Federal Rules of Evidence, "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose . . . ." Fed. R. Evid. 404(b). Parties may not introduce "evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). The spirit of Rule 404(b) is inclusionary and, as such, the Rule favors admissibility. *See United States v. Long*, 574 F.2d 761, 765-66 (3d Cir. 1978) (discussing "exclusionary" and "inclusionary" approaches of different circuits prior to adoption of Rule 404(b)). The purpose of Rule 404(b) is "simply to keep from the jury evidence that the defendant is prone to commit

5

crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence." *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008) (internal citation omitted).

If the evidence to be admitted is deemed extrinsic under Rule 404(b), we must determine whether the evidence satisfies a four-part standard for admissibility. *See United States v. Green*, 617 F.3d 233, 239-45 (3d Cir. 2010) (providing comprehensive history of treatment of bad character evidence in British and American legal systems); *see also United States v. Butch*, 256 F.3d 171, 175-76 (3d Cir. 2001) (citing *United States v. Mastrangelo*, 172 F.3d 288, 294 (3d Cir. 1999)). To be admissible under Rule 404(b), evidence must: (1) have a proper evidentiary purpose; (2) be relevant under Federal Rule of Evidence 402[4]; (3) contain a probative value that outweighs its prejudicial effect under Federal Rule of Evidence 403 (discussed *infra*); and (4) be accompanied by an appropriate limiting instruction.[5] *See Huddleston*, 485 U.S. at 691-92; *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988) (applying *Huddleston* four-part test in the Third Circuit).

This analysis need not be performed for evidence that is intrinsic to, or part of the charged offenses. *Green*, 627 F.3d at 245; *see also United States v. Haas*, 184 F. App'x 230, 234

---

[4] Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the United States Constitution, a federal statute, these rules, or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402.

[5] Federal Rule of Evidence 105 provides that "[i]f the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury." Fed. R. Evid. 105.

(3d Cir. 2006) (noting that intrinsic evidence is exempt from a Rule 404(b) analysis).[6] Most Circuits define intrinsic evidence as evidence that is "inextricably intertwined" with the charged offense. *See, e.g.*, *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012); United *States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009); *United States v. DeGeorge*, 380 F.3d 1203, 1219-20 (9th Cir. 2004); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *Bowie*, 232 F.3d at 927-29. The Third Circuit Court of Appeals has renounced the "inextricably intertwined" standard, finding it "vague, overbroad, and prone to abuse . . . ." *Green*, 617 F.3d at 249.

In the Third Circuit, evidence is intrinsic if it fits into either of two narrow categories. Evidence is intrinsic if it directly proves the charged offense. *Id.* (citing *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) (finding that appellant's involvement in price-fixing scheme was outside the civil rights conspiracy and subject to a Rule 404(b) analysis)); *see also United States v. Bobb*, 471 F.3d 491, 497-98 (3d Cir. 2006) (finding that district court's admission of uncharged assault evidence by the defendant was proper where it was direct evidence of his participation in and enforcement of conspiracy to distribute crack and cocaine); *United States v. Benjamin*, 125 F. App'x 438, 441 (3d Cir. 2005) (affirming district court ruling regarding intrinsic nature of uncharged evidence of fraud); *United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir. 1999) (finding no abuse of discretion where district court admitted evidence of the defendant's use of violence to further the illegal objectives of a cocaine conspiracy by removing

---

[6] In practice, there are two differences between intrinsic and extrinsic evidence — intrinsic evidence does not require advanced notice of the acts to be admitted into evidence to be provided to the defense and the court need not issue a limiting instruction to ameliorate the taint of the evidence. *Green*, 617 F.3d at 247-48. Intrinsic evidence still must, however, be relevant, to survive a Rule 403 balancing test, and be probative of something other than the defendant's criminal propensity. *Id.* (citing *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000)).

7

threats to himself); *United States v. Vas*, No. 09-370, 2010 WL 3169293, at *2 (D.N.J. Aug. 10, 2010) ("[F]ind[ing] that evidence of the origins of the defendants' campaign contribution scheme can be used to 'directly prove' the charged offense."). Such evidence of uncharged misconduct, which directly proves the charged offense, is not evidence of some "other" crime. *Green*, 617 F.3d at 249 (citing *Gibbs*, 190 F.3d at 218).

In addition, evidence is intrinsic is if it constitutes "'uncharged acts, which are committed contemporaneously with the charged crime' that 'facilitate the commission of the charged crime.'" *United States v. Shelow*, No. 10-0037, 2011 WL 6130974, at *3 (E.D. Pa. Dec. 9, 2011) (quoting *Green*, 617 F.3d at 249).

We conclude that the evidence of the circumstances surrounding Defendant's arrest is intrinsic evidence, as that evidence directly proves the charged RICO conspiracy offense. "The Court may not exclude intrinsic act evidence 'because it is proof of the ultimate issue in the case.'" *United States v. Johnson*, 262 F.R.D. 410, 415 (D. Del. 2009) (quoting *Gibbs*, 190 F.3d at 218)). Here, the circumstances surrounding Defendant's arrest may very well prove the charged conduct of conspiracy to participate in the affairs of a RICO enterprise. The Indictment alleges that Defendant was a member of the KSO from at least as early as late 1997 through on or about April 21, 2010. (Indictment 1.) The grand jury alleged that "[t]he KSO was an organization dedicated to committing drug trafficking offenses and violent crimes, including murder, arson, money laundering, the use and carrying of firearms during and in relation to violent crimes and drug trafficking crimes, witness tampering, retaliation against witnesses, and assault and battery." (*Id.* at 6.) The conduct at issue here was not listed as on overt act, but that does not mean it is not intrinsic to the charged conspiracy. *See United States v. Holck*, 398 F.

8

Supp. 2d. 338, 373 (E.D. Pa. 2005) ("Moreover, the Government in proving overt acts in a conspiracy is not limited by the specific acts listed in the indictment."); *see also United States v. Schurr*, 794 F.2d 903, 908 (3d Cir. 1986) ("It is well settled that the government can prove overt acts not listed in the indictment, so long as there is no prejudice to the defendants thereby."); *United States v. Mitan*, No. 08-760, 2009 WL 3169119, at *11 (E.D. Pa. Sept. 23, 2009) (same).

As of the date of Defendant's arrest, September 8, 2004, Defendant was a well-known member of the KSO who had previously murdered Barry Parker in a drug territory related slaying at the behest of Kaboni Savage. When arrested, Defendant was a fugitive evading arrest on the federal drug conspiracy charges of which he would later be convicted. (Gov't's Notice 2.) On the night in question, he was with his cousin, traveling in a rental car, in his own neighborhood, only two miles from Eugene Coleman's home. (*Id.*)[7] When he encountered the police, Defendant provided false identification under the name of "Darnell Doss." (Gov't's Notice 3.) In the car, Defendant and his cousin had a loaded nine millimeter semi-automatic handgun, a full can of gasoline, and a bag of latex gloves. (*Id.*) The Government links an intercepted call between Kaboni Savage and Kidada Savage from June 20, 2004, which reflects Kaboni Savage telling his sister to ensure that "he better go ahead" and "tell him to get on that." (*Id.* at 2.)

We conclude that this circumstantial evidence is relevant and it may be admitted at trial. *See Huddleston*, 485 U.S. at 688 (finding that the Government need not prove an act occurred by a preponderance of the evidence as "mandating a preliminary finding by the trial court that the

---

[7] Defendant notes that he was arrested headed in the opposite direction of Coleman's home and was actually closer to his own home than he was to Coleman's. (Def.'s Resp. 7.) These facts are certainly relevant and may be elicited by Defendant at trial when contesting the Government's version of events.

9

act in question occurred not only superimposes a level of judicial oversight that is nowhere apparent from the language of that provision, but it is simply inconsistent with the legislative history behind Rule 404(b)"). If we were to remove this issue from the evidence before it is considered by the jury, we would be usurping the jury's role. *See United States v. Dillon*, 532 F.3d 379, 391 (5th Cir. 2008) ("Rule 104(b) does not require corroboration. It only requires that the district court consider the witness's testimony and determine that a reasonable jury could [make the required] find[ing] by a preponderance of the evidence . . . ."). To reach the conclusion that on the night of his arrest, Defendant was driving to firebomb Coleman's home, one must conditionally find that the June 20, 2004 phone call was a coded message relayed from Kaboni Savage to Kidada Savage to instruct Defendant to retaliate against Coleman and his family. When dealing with issues of relevance based on conditional facts, Federal Rule of Evidence 104(b) requires a court to examine the proffered evidence and determine whether a jury could reasonably find the conditional fact by a preponderance of the evidence. *Huddleston*, 485 U.S. at 689-90 (citing Fed R. Evid. 104(b)). We find that such a conclusion is reasonable based on the evidence to be admitted by the Government.

Defendant objects on a number of grounds. Defendant contends that the June 20, 2004 call never mentions the name "Steven Northington" and refers only to someone with the moniker of "Dollar Sign," which has never been attributed to Defendant. (Def.'s Resp. 4.) Because of this, and what Defendant argues is a manipulative and selective use of quotations from the transcript, Defendant maintains that there is no context for the call and no reason why a Government witness would be able to opine that the call was setting up an attack on the Coleman home through Defendant. (*Id.* at 4, 5.) Furthermore, Defendant contends that the conversation

cited by the Government involves another individual, named Raymond Wilmore, to whom the statement "tell her he better go ahead man" was directed. (*Id.*) Defendant may challenge the Government's interpretation of this call, and others, at trial. As with a number of the recordings involved in this case, witnesses will be able to provide context during their trial testimony. As it presently stands, the proffer from the Government is sufficient to establish the connection between the call, Defendant's conduct, and the charged offenses.

Defendant argues that on July 22, 2004, a recording reflects Kaboni Savage telling Kidada Savage to encourage Lamont Lewis to "get on it." (Def.'s Resp. 6.) Defendant contends that the Government interprets this conversation to mean that Kaboni Savage was parlaying a message to Lamont Lewis through Kidada Savage to firebomb the Coleman home. (*Id.*) If that is the meaning of language in question from the July 22, 2004 interception, it would be consistent with the Government's interpretation of the key language from the June 20, 2004 call. The Government's theory is circumstantial, but a reasonable jury could find these facts by a preponderance of the evidence, and if it did, it would be highly probative and directly prove the charged conspiracy.

Even if one were to conclude, however, that the events at issue here were not intrinsic acts, they would still be admissible pursuant to Rule 404(b)(2). Rule 404(b) evidence must have a proper evidentiary purpose, which means "one that is probative of a material issue other than character." *United States v. Hornick*, No. 10-2461, 2012 WL 2550476, at *11 (3d Cir. July 3, 2012) (slip opinion) (internal quotation marks omitted) (finding evidence of prior arrest and confession of the defendant as propr evidence of motive and a distinctive method of operation). Both parties cite to *United States v. Green*. In *Green*, the Third Circuit found that the

11

Government's admission of evidence of the defendant's threat to kill an undercover New Jersey police officer was proper pursuant to Rule 404(b), as the evidence served at least two proper purposes: (1) the evidence of the threat provided background information to the finder of fact that completed the story of the crime; and (2) it established the defendant's motive. *Green*, 617 F.3d at 250. Evidence that establishes relationships between co-defendants and provides background information is admissible at Rule 404(b) evidence. *See United States v. Corbin*, No. 10-352, 2011 WL 2110831, at *2 (E.D. Pa. May 26, 2011) (finding that the defendants' prior gunpoint robberies of drug dealers were admissible to establish the relationships between the defendants and to explain the background of the conspiracy).

The evidence surrounding Defendant's arrest serves a number of proper evidentiary purposes. If the Government's understanding of the events is accurate, Kaboni Savage had communicated a hit on a witness and his family by way of his sister, Kidada Savage, to Defendant. That hit was to be carried out through a fire-bombing of a Government witness' home. This evidence would establish the relationship between the co-Defendants, the nature and background of the RICO conspiracy, motive for retaliation against Government witnesses and their families, the nature of their plan, and, considering that the fire-bombing of this particular witness' home eventually happened in this manner, a distinctive method of operation and absence of mistake. *See United States v. Sriyuth*, 98 F.3d 739, 747 n.12 (3d Cir. 1996) (holding that motive is a proper purpose "[b]ecause motive is always relevant in a criminal case").

By providing notice of this evidence over a month before trial, we conclude that the Government provided proper notice pursuant to Rule 404(b).

*2. Rule 403*

As discussed above, regardless of whether prior act evidence is deemed extrinsic or intrinsic, to be admissible, it must survive a Rule 403 analysis. *Bowie*, 232 F.3d at 927. Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence." Fed. R. Evid. 403. District courts are empowered with broad discretion to determine whether evidence should be excluded under Rule 403. *United States v. Pelullo*, 14 F.3d 881, 888 (3d Cir. 1994). In performing its analysis, the court is to "appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant." *Id.* (quoting *Gov't of the Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993)). The prejudice that the court is to measure is "unfair prejudice . . . based on something other than [the evidence's] persuasive weight." *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (alteration in original) (quoting *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003)).

As for a Rule 403 analysis, Defendant argues that the evidence is prejudicial and cumulative. With regard to intrinsic evidence, "[e]ven if the evidence is extremely prejudicial to the defendant, the court would have no discretion to exclude it because it is proof of the ultimate issue in the case." *United States v. Hoffecker*, 530 F.3d 137, 189 (3d Cir. 2008) (internal quotations omitted). Even if the evidence proffered by the Government is Rule 404(b) evidence, we follow the guidance of the Third Circuit Court of Appeals in finding that "Rule 404(b) evidence is especially probative when the charged offense involves conspiracy . . . [and] the

13

Government has broad latitude to use 'other acts' evidence to prove a conspiracy." *Cross*, 308 F.3d at 324 (citing *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2006)) (internal citations omitted).

The evidence proffered is highly probative. The underlying conduct occurred within North Philadelphia, near witness Coleman's home, involved an order from Kaboni Savage to a member of the KSO by way of his sister, occurred during the pendency of the KSO's control over areas of North Philadelphia, and the conduct was in support of the objectives of a drug organization, including targeting a Government witness and his family. Despite the risk of prejudice here, we observe that "[w]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *United States v. Lewis*, No. 07-258, 2009 WL 1307458, at *13 (W.D. Pa. May 8, 2009) (citing *Cross*, 308 F.3d at 323).

To mitigate the risk of unfair prejudice, we will consider a request for an appropriate limiting instruction to the jury.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike Government Notice of Intention to Admit Other Act Evidence Pursuant to Federal Rule of Criminal Procedure 404(b) must be denied.

An appropriate Order will follow.

**BY THE COURT:**

*/s/R. Barclay Surrick*
**U.S. District Judge**