IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |

**SURRICK, J.**                                                                                                                            **MAY 16, 2013**

## **MEMORANDUM**

Presently before the Court is Defendant Steven Northington's Penalty Phase Motion (ECF No. 1317.) For the following reasons, Defendant's Motion will be denied.

**I.    BACKGROUND**[1]

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") against Defendants Kaboni Savage, Robert Merritt, Steven Northington, and Kidada Savage. On March 14, 2011, the Government filed a Notice of Intent to seek the death penalty ("Notice") against Kaboni Savage, Robert Merrit, and Northington. (ECF Nos. 196, 197, 198.) A revised Notice of Intent was filed against Kaboni Savage on February 15, 2012. (ECF No. 361.)

Trial was held from February 4, 2013 to May 6, 2013. On May 13, 2013, the jury returned a guilty verdict against Northington for conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), and two counts

---

[1] A more detailed background of this case is set forth in the Court's May 10, 2013 Memorandum and Order granting in part and denying in part, Kaboni Savage's Motion to Strike the Revised Notice of Intent to Seek the Death Penalty, Defendant Robert Merritt's Motion to Strike or Modify the Notice of Intent to Seek the Death Penalty, and Defendant Steven Northington's Motion to Strike Aggravating Factors. (Strike Mem., ECF No. 1321; Strike Order, ECF No. 1322.)

of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 5, 7). Kaboni Savage was also convicted of murder in aid of racketeering of Barry Parker (Count 5)[2] and murder in aid of racketeering of Tybius Flowers (Count 7). Robert Merritt was found not guilty of the capital offenses with which he was charged.

In its Notice with respect to Northington, the Government contends that a sentence of death is justified based on the charge of murder in aid of racketeering activity related to the death of Tybius Flowers (Count 7). (Notice 1.)[3] Incorporating the Indictment's Notice of Special Findings listed in Count 1, the Government will endeavor to prove the following statutory aggravating factors: (1) previous conviction of offense for which a sentence of death or life imprisonment was authorized; (2) creation of a grave risk of death to additional persons; (3) substantial planning and premeditation; and (4) conviction for serious federal drug offenses. (Notice 2.) In addition, the Government intends to introduce evidence of non-statutory aggravating factors, namely: (1) victim impact evidence; and (2) future dangerousness of Defendant.

On May 9, 2013, Defendant Steven Northington filed the instant Penalty Phase Motion. (Def.'s Mot., ECF No. 1317.) Defendant makes the following requests with respect to the penalty phase of the trial: (1) that the jury be precluded from considering certain intent factors as to the murder of Tybius Flowers; (2) that the Court not allow the statutory aggravating factor of substantial planning and premeditation to be considered by the jury; (3) that all victim impact evidence be reduced to writing; (4) that the Government be precluded from arguing lack of

---

[2] On April 27, 2007, Northington was convicted of murdering Barry Parker in the Court of Common Pleas of Philadelphia County, and was sentenced to life in prison. (ECF No. 428.)

[3] The Notice filed against Northington also states that a sentence of death would be sought based on Count 8, which charged tampering with a witness resulting in the death of Tybius Flowers. Count 8 has been dismissed.

remorse based on Defendant's silence; and (5) that the Government be precluded from submitting the statutory aggravating factor that Defendant had a previous conviction of an offense for which a sentence of death or life imprisonment was authorized.[4]

On May 10, 2013, we filed a Memorandum and Order granting in part and denying in part Northington's prior motion to strike aggravating factors. (Strike Mem., Strike Order.) The Court denied Northington's request to strike the statutory aggravating factor of grave risk of death to additional persons, and denied his request to strike the two non-statutory aggravating factors of victim impact and future dangerousness. (Strike Mem. 35-36.) However, the Government was ordered to provide an outline of the evidence that it intends to use in support of these aggravating factors. (*Id*.)

## II. DISCUSSION

### A. Gateway Factors Under the Federal Death Penalty Act

Under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591, *et seq*. the jury must unanimously conclude beyond a reasonable doubt that the defendant was over the age of eighteen upon committing the offense and acted with one of four requisite mental states. 18 U.S.C. § 3591(a)(1)(A)-(D). The *mens rea* requirement is often referred to as a "gateway" mental state. *See United States v. O'Driscoll*, 203 F. Supp. 2d 334, 350 & n.14 (M.D. Pa. 2002); *United States v. Minerd*, 176 F. Supp. 2d 424, 441 (W.D. Pa. 2001) (distinguishing between eligibility and selection phase and calling gateway factors a "'preliminary qualification

---

[4] Defendant has also requested that the jury be precluded from considering intent factors when weighing the aggravating and mitigating factors. (Def.'s Mot. 6.) Defendant is correct that that the intent factors have to be considered independent of the aggravating and mitigating factors. *See United States v. Bolden*, 545 F.3d 609, 630 (8th Cir. 2008); *United States v. Cheever*, 423 F. Supp. 2d 1181, 1199 (D. Kan. 2006). The Court will instruct the jury that the intent factors may not be considered when balancing the aggravating factors and the mitigating factors.

3

threshold'") (quoting *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998)). Each "gateway" mental state in the FDPA requires a level of intent. Specifically, to be death penalty eligible, a defendant must have:

> (A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury that resulted in the death of the victim; (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that legal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

18 U.S.C. § 3591(a)(1)(A)-(D). Unlike under 18 U.S.C. § 848, "the gateway intent factors under the FDPA *are not* treated as aggravating factors that the jury is permitted to weigh in making a sentencing recommendation." *Cheever*, 423 F. Supp. 2d at 1199 (emphasis in original) (citing 18 U.S.C. § 3593(e)).

Here, Defendant argues that the Court should strike three of the four intent factors. (Def.'s Mot. 5.)[5] According to Defendant, the only mental state that the Government can plausibly argue would be that he "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act." (Def.'s Mot. 5) Defendant contends that "there is no view of the evidence that would show that Mr. Northington was the shooter of Mr. Flowers . . . ." (*Id.*) Defendant also argues that the second gateway factor is inapplicable, as the circumstances surrounding the murder do not comport with one intending to inflict serious bodily injury. (*Id.*) Finally, Defendant argues

---

[5] Defendant acknowledges that he was over the age of eighteen when the Flowers murder was committed. (Def.'s Mot. 3.)

that the circumstances of the Flowers murder do not support the gateway factor of creation of a grave risk of death. (*Id.*) Defendant's interpretation of the facts is inconsistent with the record.

Tybius Flowers, a witness who was slated to testify against Kaboni Savage at a trial for the murder of Kenneth Lassiter, was murdered on March 1, 2004. (March 26, 2013 Tr. 112, ECF No. 1200 (on file with Court).) Prior to March 1, 2004, Savage had told a co-conspirator, Lamont Lewis, that he was not concerned about his murder trial, because "Tibby would never make it to court." (Apr. 1, 2013 Tr. 127 (on file with Court).) The record also reflects that Savage discussed Tibby Flowers with Defendant during a visit with Savage at the Philadelphia County Prison. The Government alleged that Defendant personally committed the murder at the request of Savage to prevent Flowers from testifying at trial. The record reflects that evidence was introduced establishing that Defendant personally committed the Flowers murder. Artavius Coleman, an acquaintance of Defendant, testified that while in prison at the Federal Detention Center in Philadelphia, Defendant told him and Bienvenido Morales that he, Defendant, "slumped Tibby and sent him to rat heaven and gave his mom a family reunion." (Apr. 4, 2013 Tr. 89-90, ECF No. 1217 (on file with Court).) In addition, phone records placed Defendant, Dawud Bey, and John Tillman in the vicinity of the Flowers murder scene on the night of the murder. The record indicates that Bey and Tillman were also fully capable of carrying out Kaboni Savage's wishes. The evidence reflected that Flowers was shot by an individual using a 9mm GLOCK pistol. (*Id.* at 32.) Philadelphia Police Department ("PPD") officers recovered fifteen fired cartridge cases at the scene of the crime. (*Id.*) Defendant was convicted of the crime of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), for the murder of Flowers.

There is nothing improper about the Government alleging each of the four gateway intent factors and presenting evidence during the sentencing phase as to one or more of the factors to

5

ensure that it establishes that Defendant had the requisite mental state when he murdered Flowers. Courts regularly provide the Government with latitude in proving the gateway factors. "As evidenced by the many cases in which multiple Gateway Factors have been found, multiple mental states may be found by the jury and these mental states need not match the mental state found at the guilt phase." *United States v. Basciano*, 763 F. Supp. 2d 303, 342 (E.D.N.Y. 2011) (striking the gateway factor under Section 3591(a)(2)(D) to avoid the risk of confusing the jury where the Government argued that it was not advancing a "reckless-disregard theory," but permitting the Government to apply for reconsideration if its theory of the case changed). In *Cheever*, the defendant argued that by alleging all four mental states, the Government denied him fair notice against the relevant mental state to be argued during sentencing. *Cheever*, 423 F. Supp. 2d at 1200. From the Government's filings, however, the court found that:

> [I]t is no mystery to defendant or anyone else as to what "elements" he will be required to defend against. The government will attempt to prove to the jury that defendant "intentionally killed the victim." 18 U.S.C. § 3591(a)(2)(A). It will argue alternatively that, if the jury is not convinced defendant intended to kill the [victim], then the evidence proves he "intentionally inflicted serious bodily injury that resulted in the death of the victim." *Id.* § 3591(a)(2)(B). If the jury does not believe that argument, the government will resort to the mental state under section 3591(a)(2)(C), and ultimately, if necessary, section 3591(a)(2)(D).

*Id.* at 1200-01. The court acknowledged that the Government was merely allowing for alternative arguments of the defendant's intent. The court concluded that it would not instruct the jury on any mental states that the Government failed to prove or permit the jury to return a finding on any mental states that the Government failed to prove. *Id.*; *see also Bolden*, 545 F.3d at 630 ("Numerous decisions have approved submission of multiple mental states in FDPA cases. We agree with these decisions.") (internal citations omitted); *United States v. Diaz*, No. 05-00167, 2007 WL 656831, at *9 (N.D. Cal. Feb. 28, 2007) ("The four mental states in the FDPA are merely variations on the same theme. The jury may find that the evidence supports

6

any one of the mental states."); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 480 (E.D. Pa. 2001) (permitting the Government to attempt to prove more than one threshold mental state as alternative mental states where the intent factors were not mutually exclusive).

The evidence supports a finding that Defendant either intentionally killed Flowers, intended to inflict serious bodily injury by firing fifteen shots at him, or created a grave risk of death by firing fifteen shots. Accordingly, we conclude that the evidence introduced at trial supports any of the four gateway mental factors and the Government may introduce such evidence during the sentencing phase. Defendant was convicted after a trial that lasted over three months. There was ample evidence supporting the jury's conviction of Defendant for murdering Flowers in aid of a racketeering enterprise. Defendant clearly has sufficient notice of the evidence to be introduced against him at the sentencing phase, including the evidence that would establish his mental state. None of the mental states alleged by the Government are mutually inconsistent and the Government is permitted to argue them in the alternative.

### B. Substantial Planning and Premeditation

The Government's Notice alleges the aggravating factor that the Flowers murder was committed "after substantial planning and premeditation to cause the death of a person." (Notice 3 (citing 18 U.S.C. § 3592(c)(9).) Defendant argues that this factor is facially vague in violation of the Eighth Amendment as it fails to provide a principled basis upon which a jury could find a defendant death eligible, as opposed to others convicted of murder. (Def.'s Mot. 6-7.) In addition Defendant contends that the use of the word "substantial" is impermissible as it is not subject to a precise and commonsense definition. (*Id.* at 8.) We have thoroughly addressed these arguments in our previous opinion concerning Defendant Robert Merritt's Motion to Strike the Notice of Intent to Seek the Death Penalty. (*See* Strike Mem. 14-16.) We determined that

7

this statutory aggravating factor was not unconstitutionally vague, and that with the proper jury instruction it could be submitted to the jury. (*See id.* at 15 (citing *United States v. Bourgeois*, 423 F.3d 501, 511 (5th Cir. 2005) (holding that substantial planning and premeditation factor is not unconstitutionally overbroad and vague since it "narrow[s] the class of murderers who could be eligible for the death penalty because not every murder involves substantial planning or premeditation"); *United States v. Glover*, 43 F. Supp. 2d 1217, 1225 (D. Kan. 1999) ("[T]he court finds that precise instructions to the jury should resolve [the defendant's] vagueness concerns regarding the term 'substantial.'")).) Therefore, we reject Defendant's request to strike the substantial planning and premeditation aggravating factor.

### C. Victim Impact Witness Testimony

The Government intends to introduce victim impact evidence as a non-statutory aggravating factor at sentencing. (Notice 2-3.) The FDPA and Supreme Court precedent firmly establishes that such evidence is admissible at the sentencing phase of trial. *See* 18 U.S.C. § 3593(a); *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (holding that the Eighth Amendment "erects no per se bar" to the admission of victim impact evidence and prosecutorial argument on the subject). Specifically, with regard to the impact of the offense on the victim, the Government is permitted to introduce "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." 18 U.S.C. § 3593(a)

The Supreme Court has held "that the Constitution permits evidence 'concerning the victim's personal traits and the effect of the crime on her family . . . so long as . . . victim impact factors are used to direct the jury to the individual circumstances of the case.'" *United States v. Cooper*, 91 F. Supp. 2d 90, 110 (D.D.C. 2000) (quoting *Jones*, 119 S. Ct. at 2108). "Only where

victim impact evidence would be so unduly prejudicial as to render the defendant's trial unfair does due process mandate its exclusion." *Higgs v. United States*, 711 F. Supp. 2d 479, 527 (D. Md. 2010) (citing *Payne*, 501 U.S. at 825). The scope and limit of victim impact evidence "is a matter for the court's discretion and must be determined with consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice." *United States v. McVeigh*, 944 F. Supp. 1478, 1488 (D. Colo. 1996) (citing *Payne*, 501 U.S. at 825).

Defendant highlights several issues that may arise during the penalty proceedings which may unduly prejudice Defendant in violation of his right to due process under the Fifth and Eighth Amendments. (Def.'s Mot. 8-11.) First, Defendant makes the conclusory assertion that victim impact evidence is only meant to provide a "'quick glimpse of the life' of the victim" and so must be brief. (*Id*. at 9 (quoting *Payne*, 501 U.S. at 822).) In addition, he argues that the witnesses presenting the victim impact evidence may not offer their views on the appropriate punishment. (*Id.*) Defendant argues that based on this potential for undue prejudice, the Government must "reduce all potential victim impact evidence to writing and that these statements be read by the prospective witnesses, after the Court and counsel have had the opportunity to vet them." (*Id*. at 11.)[6]

Defendant argues that victim impact testimony must be "brief." (Def.'s Mot. 9.) We have the discretion to limit the scope, amount, and length of victim impact testimony. The Court is capable of ensuring that the amount and length of the victim impact testimony does not unduly prejudice Defendant. Moreover, we have directed the Government to provide Defendants with

---

[6] Defendant also maintains that victim impact testimony may only be related to the capital offense for which defendant is eligible for capital punishment. (Def.'s Mot. 11.) The only capital count against Defendant is the Flowers murder. The Government has advised the Court that it intends to present victim impact evidence against Defendant which relates only to the Flowers murder.

9

victim impact statements, and to the extent such statements are unavailable, an outline of the specific evidence about which that victim will testify. (*See* Strike Mem.) Upon receipt of the informational outlines from the Government, Defendant may make specific objections to the victim impact evidence.

While we agree with Defendant that victim impact witnesses are prohibited from expressing their views as to the proper sentence, there is no indication that the Government will introduce this type of testimony. *See Payne*, 501 U.S. at 852 n.2 (citing *Booth v. Maryland*, 482 U.S. 496, (1987) (leaving intact *Booth's* prohibition on the "admission of a victim's family members' characterization and opinions about the crime, the defendant, and the appropriate sentence"); *United States v. Whitten*, 610 F.3d 168, 192 (2d Cir. 2010) (recognizing that victim impact witnesses are prohibited from offering their opinion about the crime, the defendant, and the appropriate sentence); *United States v. Brown*, 441 F.3d 1330, 1351 (11th Cir. 2006) (same); *United States v. Bernard*, 299 F.3d 467, 480-81 (5th Cir. 2002) (same); *Parker v. Bowersox*, 188 F.3d 923, 931 (8th Cir.1999) (same), *cert. denied*, 529 U.S. 1038, (2000); *United States v. Sampson*, 335 F. Supp. 2d 166, 187 (D. Mass. 2004) (same); *United States v. O'Driscoll*, No. 4-01-277, 2003 WL 1401819, at *3 (M.D. Pa. Jan. 10, 2003) (same). Moreover, the prohibition on victim impact testimony does not mandate that the victims be limited to reading from written statements. In any event, we caution the Government to advise each victim impact witness to refrain from offering their opinion with respect to the defendant, the crime, or the appropriate sentence. *See O'Driscoll*, 2003 WL 1401819, at *3 (allowing live testimony and noting that it will instruct the victim impact witnesses to abstain from commenting about the defendant, the crime, or the proper sentence).

With respect to Defendant's request regarding how the victim impact evidence will be presented to the jury, the court is aware of only one district court case limiting victim impact testimony to the recitation of the witnesses' written statements. *See United State v. Henderson*, 485 F. Supp. 2d 831, 849-50 (S.D. Ohio 2007) (limiting victim impact witnesses to reading their written statements verbatim without any deviation) When presented with a similar request the district court in *Glover* denied the defendant's request to limit victim impact witnesses to reading their written statements. 43 F. Supp. 2d at 1235-36. The court specifically cited 18 U.S.C. § 3593, which authorizes the use of "oral testimony" during the penalty phase. *Id*. Moreover, the court in the case of *United States v. O'Driscoll*, denied the defendant's request to limit the presentation of victim impact testimony to videotape. 2003 WL 140189, at *3-4. (holding that the fact that victim impact evidence can be emotional did not warrant the preclusion of live testimony of the witnesses). We agree with *Glover* and *O'Driscoll*. We will ensure that the victim impact witnesses' live testimony will not be so unduly prejudicial that it will render the penalty proceedings unfair.

**D.     Lack of Remorse**

Defendant seeks an order prohibiting the Government from asserting that he has exhibited a lack of remorse for the Flowers murder as support for the aggravating factor of future dangerousness. (Def.'s Mot. 12.) In *United States v. Davis*, 912 F. Supp. 938, 946 (E.D. La. 1996), the court precluded the Government from offering "lack of remorse" as a stand-alone aggravating factor, but did permit the Government to present evidence of the defendant's exultation as probative of "future dangerousness."

Several courts have expressed concern about the evidence that may support the lack of remorse as a part of the future dangerousness aggravator. *United States v. Cooper*, 91 F. Supp.

2d 90, 113 (D.D.C. 2000) ("The Court agrees with [the defendant] that some of the proffered evidence has a substantial possibility of encroaching on the defendant's constitutional right to remain silent."); *United States v. Nguyen*, 928 F. Supp. 1525, 1541 (D. Kan. 1996). Nevertheless, courts have permitted the Government to establish a defendant's lack of remorse in the context of future dangerousness through the introduction of affirmative evidence. *See United States v. Casey*, No. 05-277, 2012 WL 6645702, at *4 (D.P.R. Dec. 20, 2012) ("[T]he United States may not implicate defendant's right to remain silent; further, the United States must adduce evidence which shows a pervasive and continuous lack of remorse."); *Cooper*, 91 F. Supp. 2d at 113 ("As to other lack of remorse evidence that does not encroach on the defendant's right to remain silent, such evidence, as it pertains to [the defendant's] future dangerousness while in prison, will be allowed if the Court determines at trial that the evidence is reliable and is not outweighed by the risk of unfair prejudice to the defendant, or the risk that it would confuse or mislead the jury."); *Nguyen*, 928 F. Supp. at 1542 ("The court cautions the government, however, that any evidence it intends to submit in support of this factor must be more than mere silence. It also must be relevant, reliable and its probative value must outweigh any danger of unfair prejudice."); *United States v. Caro*, No. 06-00001, 2006 WL 1594185, at *7 (W.D. Va. June 2, 2006) ("It is true that the government must present more than mere silence on the part of the defendant or otherwise the defendant's constitutional right to remain silent would be prejudiced.").

We will permit the Government to establish Defendant's lack of remorse in support of future dangerousness through the introduction of reliable evidence that is not unduly prejudicial and that does not implicate Defendant's decision not to testify.

### E. Previous Conviction

Finally, Defendant argues that the Government should not be permitted to submit to the jury the statutory aggravating factor that Defendant has previously been convicted of an offense for which a sentence of death or life imprisonment was authorized. (Def.'s Mot. 14-15.) Specifically, Defendant contends that because his "'previous conviction' did not occur until after the alleged commission of the capital offense in this case, it was not 'previous' and should not be submitted to the jury." (Id. at 14.) Defendant was found guilty of murder in aid of racketeering of Tybius Flowers, which occurred on March 1, 2004. (Indictment 44.) The "previous conviction" to which the statutory aggravating factor relates was the killing of Barry Parker, which occurred on February 26, 2003. (*Id.* at 42.) Defendant was convicted of the Barry Parker murder on August 27, 2007.

A similar argument was raised by co-Defendant Kaboni Savage with respect to the prior conviction for a serious drug offense aggravating factor. In our May 10, 2013 Memorandum, we rejected Kaboni Savage's contention that his "previous conviction" for the 2005 drug conspiracy was not truly previous since the drug conviction occurred after the commission of the murders for which he was charged in the instant Indictment. (Strike Mem. 24-25.) We relied on *United States v. Higgs*, which reasoned that the previous conviction for a serious drug offense "encompass[ed] *all* predicate convictions occurring prior to sentencing, even those occurring after the conduct giving rise to the capital charges." 353 F.3d 281, 318 (4th Cir. 2003) (emphasis in original).

We are satisfied that the conclusion reached by the Fourth Circuit in *Higgs* is legally sound and makes perfect sense. The aggravating factor in *Higgs* related to a prior conviction for

13

a serious drug offense.  The aggravating factor contested by Defendant here relates to a prior conviction for which a sentence of death or life imprisonment was authorized.  There is no reasonable basis upon which to conclude that Defendant's prior conviction for killing Barry Parker should be kept from the jury.  Defendant's request to strike this aggravating factor will be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Steven Northington's Motion is denied.

An appropriate Order will follow.

**BY THE COURT:**


***/s/R. Barclay Surrick***
**U.S. District Judge**