**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **STEVEN NORTHINGTON,** | : | **NO. 07-cr-550-5** |
| **Defendant.** | : | |

**MEMORANDUM**

**KENNEY, J.** **August 31, 2026**

Before the Court is Defendant Steven Northington's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 (ECF No. 1781, the "Petition"). In 2013, following a jury trial, Northington was convicted of one count of RICO conspiracy and two counts of murder in aid of racketeering for the deaths of Barry Parker and Tybius Flowers, respectively. ECF No. 1330. After a capital penalty proceeding for the Flowers murder, the jury sentenced Northington to life imprisonment on that count. ECF No. 1465. Judge Surrick then sentenced Northington to two additional, concurrent terms of life imprisonment for the remaining two counts for which he was convicted. ECF No. 1488. After a failed appeal to the Third Circuit, Northington filed the instant Petition in December 2024. ECF No. 1781. For the reasons stated below, the Petition (ECF No. 1781) will be denied.

## I. BACKGROUND

The facts are drawn from the Third Circuit's summary of the case in its opinion affirming the jury's guilty verdicts and sentences for Northington and two of his co-defendants on direct appeal. *See United States v. Savage*, 85 F.4th 102 (3d Cir. 2023) (hereinafter "*Savage II*"). Northington, along with co-defendants Kidada Savage and Robert Merritt, was indicted and convicted for his involvement in the violent activities of the Kaboni Savage Organization ("KSO"),

a regional drug trafficking gang operating in North Philadelphia that was led by ringleader Kaboni Savage. *Id.* at 112. From 1997 to 2010, the KSO sold powder cocaine, "crack" cocaine, and liquid phencyclidine ("PCP"). *Id.* Northington sold crack for the KSO near his home at 3908 North Franklin Street. *Id.* at 125.

While running the KSO, Kaboni Savage frequently ordered his subordinates to murder people who got in the way of the gang's drug-dealing activities. *See United States v. Savage*, 970 F.3d 217, 232–35 (3d Cir. 2020) (hereinafter "*Savage I*"). Northington took part in the murders of two such individuals, Barry Parker and Tybius Flowers. *Savage II*, 85 F.4th at 112 n.1. Barry Parker was a local drug dealer who encroached on Northington's turf in North Philadelphia. *Id.* at 125. When Northington complained to Kaboni Savage about Parker, Kaboni told Northington to "handle [his] business." *Id.* (alteration in original) (record citation omitted). By this, Kaboni meant that Northington should eliminate competition from Parker by killing him. *See id.* Kaboni enlisted Lamont Lewis, a high-ranking KSO member, to assist Northington with the murder. *Id.* On February 26, 2003, Lewis and Northington left Kaboni's house together and drove around the 3900 block of North Franklin Street in Northington's car in search of Parker. *Id.* When Northington spotted Parker standing at the drug corner, he parked his car nearby. *Id.* At this point, Lewis got out of the car, walked up to Parker, and shot Parker three times in the chest, killing him. *Id.*

Tybius Flowers was a rival drug dealer who had witnessed the murder of Kenneth Lassiter, who was shot and killed by Kaboni Savage back in March 1998 after Lassiter accidentally bumped into Kaboni's car while trying to park his car in the vicinity of Flowers' drug corner. *Savage I*, 970 F.3d at 232–33. In 2004, while awaiting trial for Lassiter's murder, Kaboni got wind that Flowers was planning to testify against him at trial. *Id.* at 234. The night before Flowers was scheduled to testify in court, Northington murdered Flowers by shooting him as he sat in his car outside of his

aunt's house. *Id.* Northington later divulged to a fellow prisoner that "he [had] slumped [Flowers] and sent him to rat heaven." *Id.* (alterations in original) (record citation omitted). Without Flowers' eyewitness testimony, the prosecution's case failed and Kaboni was acquitted in state court of Lassiter's murder, although he was later convicted of both murders in federal court. *Id.; see Savage II*, 85 F.4th at 115 n.10.

On May 9, 2012, a grand jury in the Eastern District of Pennsylvania returned the Fourth Superseding Indictment in this case, which charged Northington with one count of RICO conspiracy, two counts of murder in aid of racketeering for the murders of Parker and Flowers, and one count of witness tampering for the murder of Flowers. *Savage II*, 85 F.4th at 113, n.5. The witness tampering count was dismissed prior to trial, by agreement with the Government. *Id.* The Government sought the death penalty as to Northington for Count Seven, murder in aid of racketeering for Flowers' murder. *See id.* at 114. Following a jury trial, Northington was found guilty on all three counts for which he was charged and tried. *Id.* The capital penalty phase as to Northington commenced on June 5, 2013. *Id.* Following a seven-day penalty proceeding, the jury unanimously sentenced Northington to life imprisonment on Count Seven, and the District Court sentenced him to two additional terms of life imprisonment for his other two counts of conviction. *Id.* at 114, 120. Northington timely appealed his convictions and sentences to the Third Circuit, which affirmed the judgment of the District Court following a thorough review of the record. *Id.* at 114, 139.

On December 10, 2024, Northington filed the instant *pro se* Petition. ECF No. 1781. On November 6, 2025, the above-captioned case was reassigned from Judge Surrick to this Court. ECF No. 1787. After being ordered to do so, the Government filed its response to the Petition on December 19, 2025. ECF Nos. 1791, 1793. Northington has not filed any reply, though he has

filed what appears to be a second *pro se* habeas petition, ECF No. 1803, which the Court will treat as a motion to amend the Petition. On February 3, 2026, Northington filed a *pro se* motion for limited discovery, which was denied. ECF Nos. 1802, 1806. Because the time to reply to the Government's response has passed, the Petition is ripe for adjudication.

## II. LEGAL STANDARD

An inmate in federal custody may challenge the validity of his sentence under 28 U.S.C. § 2255 by filing a petition for a writ of habeas corpus. *See Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Pursuant to 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a sentence that "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." *United States v. Small*, 747 F. Supp. 3d 817, 821 (E.D. Pa. 2024) (citing 28 U.S.C. § 2255(a)). "A section 2255 petition is not a substitute for an appeal, nor may it be used to relitigate matters decided adversely on appeal." *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1074–75 (3d Cir. 1985) (citations omitted).

A prisoner's *pro se* habeas petition should be construed liberally. *See Lewis v. Attorney General of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989). The court accepts the truth of the petitioner's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record." *See United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (quoting *Booth*, 432 F.3d at 546) (alteration in original). However, bald assertions and conclusory allegations do not provide sufficient grounds to require an evidentiary hearing. *United States v. Donahue*, 792 F. App'x 165, 168 (3d Cir. 2019).

Claims for ineffective assistance of counsel are governed by the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (acknowledging that *Strickland* governs claims for ineffective assistance of counsel). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" such that petitioner was effectively denied "counsel" as guaranteed by the Sixth Amendment, with reasonableness being judged by the professional norms prevailing at the time that counsel rendered assistance. *Strickland*, 466 U.S. at 688, 690. In evaluating the reasonableness of counsel's performance, courts "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the second *Strickland* prong, a petitioner must demonstrate that counsel's errors were prejudicial—that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. Further, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (quoting *Strickland*, 466 U.S. at 696). In ruling on a § 2255 petition, the court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006).

## III. DISCUSSION

Northington raises six claims for ineffective assistance of counsel and one claim for prosecutorial misconduct in his Petition. ECF No. 1781 at 15–20. Each of the claims consists of

conclusory assertions that are not backed up by any supporting allegations or evidence. While the Court may summarily dismiss the claims on this basis, it will briefly address each claim in turn.

Beginning with the ineffective assistance of counsel claims, Northington first argues that "[b]efore the trial started counsel was deficient for not making the prosecutor disclose evidence that was favorable to the Defendant." *Id.* at 17. Northington provides no details about any supposed favorable evidence that he claims was not disclosed, and besides, his trial counsel did make efforts to compel discovery of exculpatory information in the Government's possession. *See, e.g.*, ECF No. 1435. In any case, the Government has confirmed that it diligently disclosed "literally every scrap of paper in the Philadelphia Police homicide files and District Attorney files, and fastidiously combed through separate FBI informant files" and "turned over everything it obtained from those files." ECF No. 1793 at 32. Because the prosecution disclosed all evidence, including any potentially favorable evidence, to Northington's defense team, this claim is meritless.

The second claim for ineffective assistance of counsel asserts that "counsel was deficient for not objecting to the prosecutor's misleading closing statements as to the Defendant['s] involvement in the firebombing." ECF No. 1781 at 17. This claim is factually incorrect. Northington's counsel did object to the prosecutor's statements during the trial and even moved for a mistrial immediately after the statements were made. TT 4/30/2013 at 54–56. Ultimately, this issue was preserved on appeal, where the Third Circuit held that the prosecutor's statements were harmless beyond a reasonable doubt and were cured by the District Court's contemporaneous instruction. *Savage II*, 85 F.4th at 123–25. The statements complained about were the prosecutor's final remarks at the end of the Government's closing argument: "There were six beautiful, healthy, loving people in that house and you killed them. You killed them, and you killed them, and you killed them." TT 4/30/2013 at 53. As he made those statements, the prosecutor pointed at

Defendants Kaboni Savage, Kidada Savage, and Robert Merritt, but also inadvertently pointed at Northington, who was not charged with the murders resulting from the firebombing. *Savage II*, 85 F.4th at 124. The District Court denied the motion for a mistrial by Northington's counsel and effectively cured any adverse effect of the prosecutor's misstatement by providing the following instruction to the jury, "Ladies and gentlemen, you should understand that Steven Northington is not charged with any of the Coleman arson murders. Okay? He is not charged with those crimes." TT 4/30/2013 at 57. Thus, the Third Circuit ruled that "the government's error was harmless, and the denial of Northington's motion for a mistrial was no abuse of discretion." *Savage II*, 85 F.4th at 125. The record is clear that Northington's counsel more than ably objected to the prosecutor's closing statements. The second claim is denied.

Northington's next claim is that his "counsel was deficient for not subpoena[ing] witness[es] to testify about the cor[r]uption and falsified documents the prosecutor used pertaining [to] the Leading Agent." ECF No. 1781 at 17. Northington does not elaborate further on his allegations of corruption and false documents that he claims were utilized by the Government, nor does he identify any witnesses that he now argues should have been investigated by his trial counsel. He does not specify who the "Leading Agent" is or describe his contentions of corruption against the agent. Northington's blanket assertions do not entitle him to relief on this claim, and as such, his third claim is denied.

The Petition's fourth ineffective assistance of counsel claim is another blanket assertion that "counsel was deficient for not properly investigat[ing] the Defendant['s] case as a whole." *Id.* Northington argues that he was prejudiced by this alleged lack of investigation because "there is so much evidence that would have show[n] the jury that [he] is innocent of these offenses." *Id.* However, Northington fails to explain what further investigation his counsel should have

conducted or what evidence exists that would have demonstrated his innocence as to the murders of Parker and Flowers. This conclusory and unsupported claim fails.

Next, Northington contends that "[c]ounsel was deficient for not properly filing motions and appeal[ing] the denial of a severance from the trial as to the Defendant['s] involvement of the uncharged offense." *Id.* at 18. This claim is false. Northington's trial counsel filed a motion to sever his trial from each of his co-defendants on February 17, 2012. ECF No. 363. After the District Court denied the motion, Northington's appellate counsel appealed to the Third Circuit, which affirmed the District Court's denial. *Savage II*, 85 F.4th at 120. In affirming the District Court's ruling, the Third Circuit noted that "[t]he verdicts in this case . . . show that the jury thoughtfully differentiated the crimes committed by the defendants, yielding some not-guilty verdicts and, in Northington's case, sparing his life." *Id.* at 119–20. The record thus clearly demonstrates that Northington's counsel diligently pursued a severance of his trial from his co-defendants. That his counsel were ultimately unsuccessful does not signify that Northington was denied effective assistance of counsel. The Petition's fifth claim fails.

The final ineffective assistance of counsel claim makes only a general assertion that "[c]ounsel was deficient for not properly representing the Defendant as a client in the manner guaranteed by the 6th Amendment" because "counsel['s] performance fell below an[] objective standard of reasonableness." ECF No. 1781 at 18. Northington provides nothing to support this claim and does not explain how his counsel were deficient in their representation or what aspects of their performance were lacking. As such, this merely conclusory claim is denied.

Similar to his ineffective assistance of counsel claims, Northington's claim for prosecutorial misconduct is also unsupported and non-specific. *See id.* at 19. He argues that "the prosecutor was in fact being vindicative by allowing false evidence into trial as to the false

statements and documentation from a well know[n] cor[r]upted Agent that entered said false testimony and false documentation into trial." *Id.* As with his prior claims, Northington provides no evidence for this assertion and does not specify what false evidence was introduced at trial. Northington again complains about the prosecutor's "misleading" comments to the jury, *see id.*, which have already been addressed at length. Also as stated, the Government has confirmed that it disclosed all evidence to the defense and did not withhold *Brady* materials. *See* ECF No. 1793 at 31–32. Therefore, Northington's prosecutorial misconduct claim is groundless.

Turning to Northington's second *pro se* habeas petition, filed on February 3, 2026, which the Court will construe as a motion to amend the Petition, this successive filing primarily repeats arguments that were made in the Petition. ECF No. 1803. First, Northington asserts that because his life sentence depends solely on findings relating to the Parker and Flowers homicides, "any constitutional defect affecting their reliability necessarily undermines confidence in the life sentence." *Id.* at 2. Northington, however, does not identify any such constitutional defects. He was properly convicted by the jury for his role in the murders of Parker and Flowers and was also sentenced to life imprisonment by the jury for the Flowers murder conviction. *See Savage II*, 85 F.4th at 114. Second, Northington claims that his "life sentence violates Due Process because it was imposed based on unreliable sentencing facts" because "[t]he homicide findings as to Barry Parker and Tybius Flowers were established through credibility-dependent testimony, narrative synthesis and interpretive evidence that was materially unreliable." ECF No. 1803 at 3. It is the role of the jury in this country's judicial system to make credibility determinations and weigh the evidence presented at trial, and over the length of the three-month trial in this case, that is precisely what the jury did when it found Northington guilty in the face of overwhelming evidence. *See Savage II*, 85 F.4th at 125. Northington also fails to point out what evidence was unreliable or

materially false. Third, he argues, yet again, that the Government suppressed exculpatory evidence, ECF No. 1803 at 3, which the Court has already addressed. And finally, Northington raises another ineffective assistance of counsel claim, contending that "counsel rendered ineffective assistance by failing to adequately challenge the reliability of the homicide sentencing factors and by failing to pursue discoverable impeachment and exculpatory evidence." *Id.* Again, Northington offers no details regarding what impeachment or exculpatory evidence his counsel allegedly failed to pursue and what sentencing factors counsel should have challenged. For the reasons stated, Northington's attempt to amend his Petition fails because all of the additional claims lack merit.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny Northington's Petition for a Writ of Habeas Corpus (ECF No. 1781). Additionally, because the record is clear on the facts pertaining to the issues raised in Northington's Petition, as discussed above, an evidentiary hearing is not necessary to resolve this case. No certificate of appealability will issue because Northington has not made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2).

An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**